```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                          3/31/2022

                          CENTRAL DISTRICT OF CALIFORNIA
                          BY: _____JB_____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>JOSE LANDA-RODRIGUEZ,<br>  aka "Jose Rodriguez-Landa,"<br>  aka "Jose Landa,"<br>  aka "Jose Rodriguez,"<br>  aka "Fox,"<br>  aka "Fox Tapia,"<br>  aka "F-X,"<br>  aka "Alejandro Tapia,"<br>  aka "Cola Rojo,"<br>  aka "Red Tail,"<br>  aka "Pops,"<br>  aka "Tio,"<br>  aka "The General,"<br>  aka "Taras,"<br>  aka "The Old Man,"<br>  aka "The Animal,"<br>  aka "Old School,"<br>GABRIEL ZENDEJAS-CHAVEZ,<br>  aka "Corbatas,"<br>RAFAEL LEMUS,<br>  aka "Ere,"<br>  aka "The Voice,"<br>  aka "La Voz,"<br>ALVINO MUNOZ,<br>  aka "Bino,"<br>  aka "B,"<br>HECTOR DUARTE,<br>  aka "Lil Man,"<br>  aka "Hecko," | CR No. 18-00173(A)-GW<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 1962(d): Racketeer<br>Influenced and Corrupt<br>Organizations Conspiracy; 18<br>U.S.C. §§ 1959(a)(1), (3), (5):<br>Violent Crimes in Aid of<br>Racketeering Activity; 21 U.S.C.<br>§ 846: Conspiracy to Distribute<br>and Possess With Intent to<br>Distribute Controlled Substances;<br>21 U.S.C. §§ 841(a)(1), (b)(1)(B),<br>(b)(1)(C): Possession with Intent<br>to Distribute Controlled<br>Substances; 18 U.S.C.<br>§ 1956(a)(1)(A)(i): Money<br>Laundering; 18 U.S.C.<br>§ 1029(a)(3): Possession of at<br>Least Fifteen Access Devices; 18<br>U.S.C. § 1028A(a)(1): Aggravated<br>Identity Theft; 18 U.S.C. § 2:<br>Aiding and Abetting and Causing an<br>Act to Be Done; 18 U.S.C. §§ 1963,<br>982, and 1029, and, 21 U.S.C.<br>§ 853: Criminal Forfeiture] |

1   SAMANTHA RIVERA,
      aka "Sam,"
2     aka "S,"
    MARK LANDEROS,
3     aka "Smokey,"
      aka "Troy,"
4     aka "Hot,"
    CECILIA VIRGEN,
5     aka "Cecilia DeLeon,"
      aka "Sessy,"
6     aka "Hazel,"
      aka "Gia,"
7     aka "Sky,"
      aka "Hooker,"
8   NANCY DUARTE,
      aka "Pink,"
9   VALENTIN CORDOVA,
      aka "Teen,"
10  DAVID BERNARDINO,
      aka "Downer,"
11  MIRIAM MEZA,
    ANA MARTINEZ,
12    aka "Ana America,"
      aka "Bandit,"
13  ADRIAN ARAIZA,
      aka "Chemo,"
14  DAVID DIAZ,
      aka "Stomps,"
15  ROBERT RAMIREZ,
      aka "Wiz,"
16  JUAN LEONARD GARCIA,
      aka "Little John,"
17    aka "Trevor,"
    BRYANNA MCCULLAH,
18    aka "Bee Bee," and
    JUAN NMN GARCIA,
19    aka "Trouble,"

20            Defendants.

21

22        The Grand Jury charges:

23                    GENERAL ALLEGATIONS

24  A.    HISTORY AND STRUCTURE OF THE MEXICAN MAFIA

25        1.    The Mexican Mafia, also known as "La Eme," is a "gang of

26  gangs" comprised mostly of senior members of southern California

27  Hispanic street gangs who have come together to control and profit

28  from the activities of Hispanic gangs operating in southern

                                2

California.  La Eme was established in the 1950s by Hispanic youth inmates at the Duell Vocational Facility, but over the decades has morphed into an international criminal organization.  Today, there are approximately 140 full members of the Mexican Mafia, referred to as "carnales" or "brothers."  The majority of Mexican Mafia members are incarcerated in California prisons or jails or in federal prisons.  By exercising control over inmates in the prison and jail systems, primarily through violence and threats of violence, the Mexican Mafia is able to control the activities of southern California Hispanic criminal street gangs, both inside and outside custody facilities.  Mexican Mafia members and associates wield such power over the prison and jail populations that they are able to order that acts of violence be carried out not only against other prison or jail inmates, but also against street gang members and others outside of prison or jail.

2.    Members of the Mexican Mafia have divided control of, and the rights to criminal proceeds from, nearly all penal facilities in California, including state prison and county jail systems. Similarly, members of the Mexican Mafia have divided the rights to criminal proceeds from the activities of southern California Hispanic criminal street gangs in various southern California neighborhoods.

3.    Generally, one member of the Mexican Mafia has control of and rights to a specific facility.  That member, whether incarcerated in that facility or not, will control the smuggling of drugs into the facility, the collection of taxes from the sale of those drugs, extortion within that facility (including the kitty and other fines discussed below), and the maintenance of discipline within the

facility.  In some cases, different members of the Mexican Mafia may control different parts of the same facility.

4.  Similarly, members of the Mexican Mafia have divided control of and the rights to "taxes," or a share of criminal proceeds from criminal activities including drug trafficking, from nearly all Hispanic gangs in southern California.  Generally, one member of the Mexican Mafia has control of and rights to a specific area; that Mexican Mafia member will control the sale of drugs within that area, the collection of taxes from that area, and the maintenance of discipline over gang members from that area.

5.  The division of control of custody facilities and neighborhoods is generally agreed upon by the members of the Mexican Mafia, although there are occasionally disputes among members as to the division.  Once a Mexican Mafia member acquires control of a custody facility or neighborhood, he can generally operate that custody facility or neighborhood without interference from other members.  The Mexican Mafia member in control of a custody facility or neighborhood will put together a team of trusted associates to control the custody facility or neighborhood.

6.  The Mexican Mafia is split into two major subgroups, "State" and "Federal."  A State Mexican Mafia member can control state prisons, southern California jails, and southern California neighborhoods, but generally not federal facilities.  A Federal Mexican Mafia member can control federal facilities anywhere in the country, and southern California neighborhoods, but usually cannot control a state prison or a county jail.

7.  To become a Mexican Mafia member, a Hispanic gang member generally must have a distinguished reputation for "putting in work"

4

on behalf of the Mexican Mafia, meaning the gang member has murdered or assaulted enemies and rivals of Mexican Mafia members. Prospective members are also expected to have provided financial assistance to Mexican Mafia members, and to have followed the Mexican Mafia rules that govern the streets or correctional institutions.

8.   Mexican Mafia members carry out their criminal activity with the help of associates.  Some of these trusted associates act as "shot-callers," that is, high-level associates who have been given the authority to conduct affairs of the Mexican Mafia, such as collecting extortion and drug money and enforcing discipline in their particular areas of control.  A "facilitator" is the highest level shot-caller and works directly under the authority of the Mexican Mafia member who appointed him.  The facilitator coordinates the activities of the other shot-callers and is responsible for ensuring that other shot-callers carry out the Mexican Mafia member's orders in their area of responsibility, whether in a neighborhood or a custody facility.

9.   Members of Hispanic street gangs in southern California are referred to as "Surenos" and fall under the control of the Mexican Mafia.  "Surenos" may also be referred to as "Southsiders." Additionally, the Mexican Mafia considers Mexican nationals, referred to as "Paisas," and Hispanic-American citizens who are not members of a gang, generally referred to as "Residents," to fall under the Mexican Mafia's control while in a custody facility, and trusted Residents and Paisas may participate in or be given shot-caller positions in Mexican Mafia affairs.

10.   Members and associates of street gangs controlled by and/or affiliated with the Mexican Mafia must pay "taxes" to members and

associates of the Mexican Mafia for permission to maintain control over their territories in order to distribute drugs and engage in other criminal activity.  This system of "taxation" amounts to widespread extortion.  These "taxes" also ensure the protection of the gang's members once they enter prisons or jails.  The "taxing" and control applies to activities both in and out of jail or prison. Indeed, a jail or prison, or a floor, yard, or other unit of a jail or prison is considered by the Mexican Mafia to be territory just as much as a neighborhood.

11.  Surenos, whether in a custody facility or in a neighborhood, operate as soldiers or workers for the Mexican Mafia. Indeed, being loyal to the Mexican Mafia is an integral part of being a southern California Hispanic street gang member, and it is openly understood that when individuals join such gangs that they are joining an entity loyal to the Mexican Mafia.  Members of such gangs are expected to, and are proud to, carry out the orders of the Mexican Mafia member in control of their neighborhood or custody facility, because doing work for the Mexican Mafia increases the gang member's status and reputation.  Some gangs proudly include in their name the number "13," denoting the letter M, or "eme" in Spanish, in order to demonstrate the gang's loyalty and allegiance to the Mexican Mafia.

B.   THE MEXICAN MAFIA'S ORGANIZATION WITHIN THE LOS ANGELES COUNTY JAIL SYSTEM

12.  The Los Angeles County Jail System ("LACJ" or "the System") is operated by the Los Angeles County Sheriff's Department ("LASD") and receives moneys from the United States Department of Homeland Security and other federal agencies.  The system includes various

men's facilities including Men's Central Jail ("MCJ"), the Twin Towers Correctional Facility ("Twin Towers"), the Inmate Reception Center ("IRC"), the North County Correctional Facility ("NCCF"), Pitchess Detention Center—North Facility ("Pitchess North"), Pitchess Detention Center—East Facility ("Pitchess East"), and Pitchess Detention Center—South Facility ("Pitchess South").  On any given day, the System houses approximately 15,000 inmates.

13.  At any time, one Mexican Mafia member may exercise control over the entire LACJ system, or control of various facilities within the System may be divided among different members of the Mexican Mafia.  The Mexican Mafia member in charge of an LACJ custody facility maintains control over the facility with the assistance of trusted shot-callers, facilitators, and associates.  These Mexican Mafia members and associates, working together to control criminal activity within LACJ, have become their own entity or enterprise and effectively function as an illegal government within LACJ custody facilities ("the Mexican Mafia LACJ Enterprise").

1          COUNT ONE

2          [18 U.S.C. § 1962(d)]

3     [DEFENDANTS JOSE LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL

4     LEMUS, ALVINO MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS,

5     CECILIA VIRGEN, NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO,

6          MIRIAM MEZA, ANA MARTINEZ, ADRIAN ARAIZA, AND DAVID DIAZ]

7          1.    Paragraphs 1 through 13 of the General Allegations of this

8     First Superseding Indictment are re-alleged and incorporated by

9     reference as if fully set forth herein.

10    A.    THE RACKETEERING ENTERPRISE

11         2.    At all times relevant to this First Superseding Indictment,

12    defendants JOSE LANDA-RODRIGUEZ, also known as ("aka") "Jose

13    Rodriguez-Landa," aka "Jose Landa," aka "Jose Rodriguez," aka "Fox,"

14    aka "Fox Tapia," aka "F-X," aka "Alejandro Tapia," aka "Cola Rojo,"

15    aka "Red Tail," aka "Pops," aka "Tio," aka "The General," aka

16    "Taras," aka "The Old Man," aka "The Animal," aka "Old School,"

17    GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas," RAFAEL LEMUS, aka "Ere," aka

18    "The Voice," aka "La Voz," ALVINO MUNOZ, aka "Bino," aka "B," HECTOR

19    DUARTE, aka "Lil Man," aka "Hecko," SAMANTHA RIVERA, aka "Sam," aka

20    "S," MARK LANDEROS, aka "Smokey," aka "Troy," aka "Hot," CECILIA

21    VIRGEN, aka "Cecilia DeLeon," aka "Sessy," aka "Hazel," aka "Gia,"

22    aka "Sky," aka "Hooker," NANCY DUARTE, aka "Pink," VALENTIN CORDOVA,

23    aka "Teen," DAVID BERNARDINO, aka "Downer," MIRIAM MEZA, ANA

24    MARTINEZ, aka "Ana America," aka "Bandit," ADRIAN ARAIZA, aka

25    "Chemo," and DAVID DIAZ, aka "Stomps," and others known and unknown

26    to the Grand Jury, were members and associates of an organization

27    engaged in, among other things, acts involving murder, kidnapping,

28    robbery, extortion, trafficking in controlled substances, witness

8

tampering, money laundering, and identity theft.  At all relevant times, this organization, hereinafter the "Mexican Mafia LACJ Enterprise," operated within the Central District of California and elsewhere.  The Mexican Mafia LACJ Enterprise, including its leaders, members, and associates, constitutes an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and the activities of which affect, interstate and foreign commerce.  The Mexican Mafia LACJ Enterprise constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    The Mexican Mafia LACJ Enterprise operates for the benefit of the Mexican Mafia member or members deemed by the Mexican Mafia to be in control of LACJ.  The Mexican Mafia LACJ Enterprise conducts its activities within LACJ facilities and in some surrounding neighborhoods by imposing the rules of the Mexican Mafia on inmates within LACJ facilities and on members of predominantly Hispanic street gangs.  Using the methods of the Mexican Mafia, the Mexican Mafia LACJ Enterprise carries out its goals of controlling drug trafficking activities and the distribution of drug trafficking proceeds, extortion, and the enforcement of Mexican Mafia rules both inside and outside LACJ facilities.

4.    The Mexican Mafia LACJ Enterprise operates to carry out the goals and objectives of the Mexican Mafia within LACJ custody facilities and in some surrounding neighborhoods, including by directing and controlling drug trafficking activities and the distribution of drug trafficking proceeds, extortion, as well as the enforcement of Mexican Mafia rules (which are used as a basis for

extortion), both inside and outside the LACJ custody facilities.
More specifically:

      a.   The Mexican Mafia LACJ Enterprise keeps track of southern California Hispanic gang members through lists known as "roll calls," made to keep track of every Sureno in a particular module or dorm, often including the inmate's name, booking number, next court date, gang, and/or moniker.  This enables the Mexican Mafia LACJ Enterprise to track down persons in bad standing, to coordinate the movement of drugs and kites, to account for kitty revenue, and other enterprise business.

      b.   Mexican Mafia LACJ Enterprise members and associates in prisons or jails send instructions to local street gangs and other Mexican Mafia members and associates, both inside and outside prison and jail, via telephone calls, prison system e-mails, letters, "kites" (which are notes smuggled by prisoners), "verbals" (passing a particularly sensitive message verbally from inmate to inmate), and by conveying messages through jail or prison visitors.  Mexican Mafia LACJ Enterprise members and associates generally use coded language in order to conceal the true nature of their discussions with and instructions to criminal associates.  In order to pass on instructions and information from prison and jail, Mexican Mafia LACJ Enterprise members and associates generally rely on associates, often female, known as "secretaries," who communicate with incarcerated Mexican Mafia members and associates and relay their instructions to others.  In addition, attorneys who are willing to assist in the Mexican Mafia's criminal activities are utilized by the Mexican Mafia LACJ Enterprise to pass messages concerning these activities and to facilitate communication among its members and associates.  These

1    attorneys are particularly valued by members of the Mexican Mafia

2    LACJ Enterprise because they provide a means to shield criminal

3    communications from law enforcement by providing the appearance of

4    attorney-client privilege and a veneer of legitimacy to their

5    criminal communications.  Both secretaries and attorneys are treated

6    as respected criminal figures by members of street gangs controlled

7    by and/or affiliated with the Mexican Mafia LACJ Enterprise.

8         c.   Another method of communication employed by the

9    Mexican Mafia LACJ Enterprise is telephone calls made with "burnout"

10   phones.  Burnout phones are phones that use landline service opened

11   with stolen identities.  The Mexican Mafia LACJ Enterprise uses

12   burnout phones to make collect calls from prisons and jails to

13   associates on the outside until the telephone company realizes the

14   account is fraudulent and shuts the line off.

15        d.   The Mexican Mafia LACJ Enterprise commonly extorts

16   money from gang members and associates who violate enterprise rules

17   and from those who want to engage in profitable activities in areas

18   controlled by the Mexican Mafia LACJ Enterprise.  If the gang member

19   or associate does not pay the demanded sum, or has violated Mexican

20   Mafia or enterprise rules, a Mexican Mafia leader commonly will order

21   that the person be assaulted until that individual complies.

22   Alternatively, if the non-compliant individual refuses to pay, or if

23   the enterprise is not able to punish the individual, the Mexican

24   Mafia LACJ Enterprise may extort or punish family members, close

25   associates, members of that person's gang, or others related to the

26   person.  If a person or gang does not meet the Mexican Mafia LACJ

27   Enterprise's payment demands, they will be subjected to violence

28   until they comply.

e.   One of the Mexican Mafia LACJ Enterprise's most effective ways of extorting or taxing gang members and other Hispanic inmates in jail or prison is through the "kitty."  Once a week, in every module of the Los Angeles County Jail system, inmates are allowed to purchase items from the LASD-operated store or commissary. These items include candy bars, soup, ramen noodles, shower shoes, deodorant, baby powder, and other food and personal hygiene items. In every jail module controlled by the Mexican Mafia LACJ Enterprise, every Hispanic gang member, Paisa, or Resident is required to contribute commissary items of a certain value (e.g., one dollar's worth of items) into the kitty for every set amount of items purchased (e.g., fifteen dollars' worth).  The Mexican Mafia member in control of the module sets the contribution rates for the kitty, and the module shot-caller collects the commissary items and sells them to a person in the module for a price that is also set by the Mexican Mafia member.  The payment for the kitty is made to a secretary or facilitator outside of the facility, who forwards it to the Mexican Mafia member who controls that facility.

f.   The Mexican Mafia LACJ Enterprise also makes money by controlling the sales of drugs.  On the streets, profiting from drug trafficking takes the form of "taxing" drug dealers.  All drug dealers in an area controlled by the Mexican Mafia LACJ Enterprise must pay a percentage of their profits from the sale of drugs to the enterprise.  If the drug dealer does not pay, he will not be allowed to sell drugs in that area, under threat of assault or even death. If the drug dealer does pay the tax, the drug dealer benefits by receiving protection from other dealers or robbers and gains assistance in collecting debts.

g.    Inside of custody facilities, the taxing of drug trafficking takes two forms.  First, Mexican Mafia members, shot-callers, and associates will arrange for drugs to be smuggled to them inside the Los Angeles County Jail System.  Once the Mexican Mafia member or his trusted shot-caller or facilitator within a facility receives the drugs, he will direct their sale within the Los Angeles County Jail system with the proceeds benefiting the member in control of that facility.  Furthermore, others within the facility will not be allowed to sell their own drugs until the Mexican Mafia member's drugs have been sold.  Second, the Mexican Mafia's control of drug trafficking is maintained by collecting a "thirds" tax on all other drugs that are smuggled into the Los Angeles County Jail system.  Pursuant to the thirds tax, one third of each shipment of drugs that is smuggled into the Los Angeles County Jail system must be "broken-off" and given to the Mexican Mafia member in control of the facility or his trusted shot-caller or facilitator.  If the Mexican Mafia member decides to sell the "thirds-tax" portion of the drugs, they are sent to a dorm or module for sale with the proceeds going to the Mexican Mafia member, and others in the facility are not allowed to sell drugs until the Mexican Mafia member's thirds have been sold.

h.    The Mexican Mafia LACJ Enterprise does not limit its extortion to the sale of drugs and the operation of the kitty.  The enterprise may subject any person or inmate in a Mexican Mafia LACJ Enterprise controlled neighborhood, facility, or module to extortion for any money-generating activity he or she engages in while in the enterprise controlled territory.

i.    The Mexican Mafia LACJ Enterprise has self-imposed rules handed down by the Mexican Mafia.  These rules, referred to as

13

"reglas," are imposed to maintain fear and compliance among Surenos. Because these rules provide a basis for being fined as well as assaulted, they are a key part of the Mexican Mafia LACJ Enterprise's extortion scheme.  If a southern California Hispanic gang member should break one of these rules, discipline is imposed by a facilitator, shot-caller, or secretary of the Mexican Mafia member in control of the facility.  Such discipline is frequently imposed in the form of a fine or an assault.  Assaults are often referred to as "13 Seconds," "26 Seconds," or "39 Seconds."  The premise underlying these punishments is that a person who breaks an enterprise rule should be punished by beatings for either 13 seconds, or for a multiple of 13 seconds.  Thirteen seconds is a less severe form of punishment that usually involves two individuals assaulting the offender for thirteen seconds.  Thirty-nine seconds is a more severe form of punishment that involves three (or in some cases more) individuals assaulting the offender for 39.  Thirty-nine seconds can have different variations.  For example, thirty-nine seconds could be issued in the form of three 13-second assaults on the same day (sometimes referred to as "breakfast, lunch, and dinner") or it could be one 39-second assault.  A 39-second punishment where three individuals assault an offender for 39 consecutive seconds is also commonly referred to as a "smash out" because the offender is usually moved out of the area after the assault for his own safety by prison or jail personnel.  Finally, "sopas," the Spanish word for "soups," is another common term for an assault.

      j.   One of the most important rules for which discipline may be imposed by the Mexican Mafia LACJ Enterprise is a prohibition on cooperating with law enforcement.

14

1      k.    Another important rule of the Mexican Mafia that is

2  enforced within the Mexican Mafia LACJ Enterprise is that any inmate

3  who is in custody for a sex offense is to be assaulted on sight.

4  After the sex offender is assaulted, the Mexican Mafia then extorts

5  payment from the sex offender in exchange for the Mexican Mafia's

6  agreement that there will be no further assaults.

7      l.    The most serious form of discipline is being put on

8  the "green light list" or being "greenlighted."  Being placed on the

9  green light list means that every Sureno is obligated to severely

10  assault the person, even if death is likely to result.  Only

11  true/full members of the Mexican Mafia can put a person, group, or

12  entire gang on the green light list.  Those who are put on a green

13  light list can be removed by the payment of a hefty fine.

14  B.   PURPOSES OF THE ENTERPRISE

15      5.    The purposes of the Mexican Mafia LACJ Enterprise include,

16  but are not limited to, the following:

17      a.    Enriching members and associates of the Mexican Mafia

18  LACJ Enterprise through, among other things, the control of and

19  participation in the distribution of controlled substances both

20  within LACJ and in Mexican Mafia-controlled territories outside of

21  LACJ, extortion of others engaged in the distribution of controlled

22  substances and other crimes within and outside of LACJ, and extortion

23  of inmates within LACJ.

24      b.    Maintaining control and authority over LACJ, often

25  through threats, intimidation, and acts of violence against LACJ

26  inmates.

27  //

28  //

15

      c.    Maintaining control and authority over LACJ in order to maintain general Mexican Mafia discipline and to ensure that the rules and orders are obeyed.

      d.    Promoting and enhancing the Mexican Mafia LACJ Enterprise's members and associates and their activities.

      e.    Punishing Mexican Mafia members and associates who do not comply with the rules and orders of the Mexican Mafia in general, including and especially those who cooperate with law enforcement.

C.   <u>MEANS AND METHODS OF THE ENTERPRISE</u>

   6.    The means and methods by which the defendants and their associates conduct and participate in the conduct of the affairs of the Mexican Mafia LACJ Enterprise include the following:

      a.    Engaging in drug trafficking, including the smuggling of controlled substances into LACJ, as a means to generate income.

      b.    Engaging in extortion, including the operation of the kitty within LACJ, and including fines for violations of Mexican Mafia rules, as a means to generate income.

      c.    Working together to collect a portion of the proceeds of drug trafficking conducted by others both outside of LACJ and inside of LACJ, such as through the thirds tax, as a means to generate income.

      d.    Committing, attempting to commit, and threatening to commit acts of violence to protect and expand the enterprise's criminal operation, including assaults, murders, acts of intimidation, and threats of violence directed against rival gang members, witnesses to the Mexican Mafia LACJ Enterprise's criminal conduct, and Mexican Mafia members and associates who do not follow the rules and orders of the Mexican Mafia in general.

1    e. Promoting a climate of fear, particularly among rival

2 gang members, potential witnesses to the enterprise's criminal

3 conduct, Hispanic gang members, Paisas, or others who may cooperate

4 with law enforcement within LACJ and throughout southern California,

5 through acts of violence and threats to commit acts of violence.

6    f. Engaging in the aforementioned criminal activity in

7 the presence of other Mexican Mafia LACJ Enterprise members or

8 associates in order to enhance the status of those affirmatively

9 conducting the criminal acts, and committing the aforementioned

10 criminal activity for the purpose of earning the respect of Mexican

11 Mafia LACJ Enterprise members in the hope of achieving higher status.

12    g. In the case of more senior members of the Mexican

13 Mafia LACJ Enterprise and their designated assistants, including

14 secretaries, shot-callers, and facilitators, providing instructions

15 to junior members and associates regarding distribution of controlled

16 substances, including smuggling controlled substances into LACJ,

17 collection of drug and extortion proceeds, commission of acts of

18 violence, commission of fraud and identity theft, and providing

19 verification that such crimes have occurred.

20    h. In the case of more junior members and associates of

21 the Mexican Mafia LACJ Enterprise, engaging in the smuggling of

22 controlled substances into LACJ, carrying out assaults in LACJ and

23 elsewhere, and committing fraud and identity theft, all on the orders

24 of more senior members and associates.

25 D. <u>OBJECT OF THE CONSPIRACY</u>

26  7. Beginning on a date unknown, and continuing until at least

27 March 29, 2018, in Los Angeles and San Bernardino Counties, within

28 the Central District of California, and elsewhere, defendants JOSE

LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, ALVINO MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, CECILIA VIRGEN, NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO, MIRIAM MEZA, ANA MARTINEZ, ADRIAN ARAIZA, and DAVID DIAZ, and others known and unknown to the Grand Jury, being persons employed by and associated with the Mexican Mafia LACJ Enterprise, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of:

multiple acts involving:

a.    Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

b.    Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

c.    Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

d.    Extortion, in violation of California Penal Code Sections 21a, 31, 182, 518, 519, 524, and 664;

multiple offenses involving:

e.    the distribution of, possession with intent to distribute, and conspiracy to possess with intent to distribute and distribute controlled substances, including methamphetamine, heroin, cocaine, cocaine base, and marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 846;

and multiple acts indictable under the following provisions of federal law:

       f.   Title 18, United States Code, Section 1512, Tampering with a Witness;

       g.   Title 18, United States Code, Section 1513, Retaliating against a witness;

       h.   Title 18, United States Code, Sections 1956 and 1957, Money Laundering;

       i.   Title 18, United States Code, Section 1028, Identity Fraud; and

       j.   Title 18, United States Code, Section 1029, Access Device Fraud.

8.   It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

E.   <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

9.   The object of the conspiracy was to be accomplished, in substance, as follows:

       a.   Defendant JOSE LANDA-RODRIGUEZ and deceased Mexican Mafia member 1 ("DMM-1") and deceased Mexican Mafia member 2 ("DMM-2"), as full members of the Mexican Mafia, would have the right to control and collect criminal proceeds, including proceeds from extortion and the sale of controlled substances, from neighborhoods or correctional facilities.

       i.   DMM-1 would control the Los Angeles County Jail System from around October 2007 until his death on June 20, 2013.

19

1        ii.   Defendant JOSE LANDA-RODRIGUEZ would control the

2 Los Angeles County Jail System from on or about June 20, 2013, until

3 at least January 26, 2016, except that he would cede control of NCCF

4 to DMM-2, on or about July 6, 2014.

5        iii. DMM-2 would control NCCF from July 6, 2014,

6 through his death in June 2016.

7       b.   Defendants GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, and

8 ALVINO MUNOZ, and co-conspirators Luis Garia, Daniel Cervantes,

9 Miguel Calderon,  Ernesto Vargas, Miguel Rodriguez, Gilbert Parra,

10 Gerardo Tapia, and Donato Gonzales, and unindicted co-conspirator 1

11 ("UICC-1"), would act as facilitators for one or more full members of

12 the Mexican Mafia who was also a member of the Mexican Mafia LACJ

13 Enterprise and would act with the authority of that Mexican Mafia

14 LACJ Enterprise member in directing the criminal activities of the

15 Mexican Mafia LACJ Enterprise, including extortion and the sale of

16 controlled substances.

17       i.   UICC-1 would carry out the orders of DMM-1 within

18 the Los Angeles County Jail System from about July 2012 through on or

19 about June 20, 2013.

20       ii.  UICC-1 would carry out the orders of defendant

21 JOSE LANDA-RODRIGUEZ within the Los Angeles County Jail System from

22 on or about June 20, 2013, through on or about November 5, 2013.

23       iii. Defendant GABRIEL ZENDEJAS-CHAVEZ, from outside

24 the Los Angeles County Jail System, would use his position as an

25 attorney to assist defendant JOSE LANDA-RODRIGUEZ, and co-

26 conspirators Luis Garcia and DMM-2, and other co-conspirators, with

27 activities inside and outside the Los Angeles County Jail System.

28

iv.   Defendant RAFAEL LEMUS, from outside the Los Angeles County Jail system, would work for and carry out the orders for DMM-2, including collecting drug proceeds, fines, and kitty extortion from NCCF from on or before February 4, 2014, through November 22, 2015.

v.   Co-conspirator Luis Garcia, from inside the Los Angeles County Jail System, would work for and carry out the orders of defendant JOSE LANDA-RODRIGUEZ from on or about November 5, 2013, through on or about May 28, 2014.

vi.   Defendant ALVINO MUNOZ, from both inside and outside the Los Angeles County Jail System, would work for and carry out the orders of defendant JOSE LANDA-RODRIGUEZ from about April 2015 through at least July 2015.

vii. Co-conspirator Daniel Cervantes, from outside the Los Angeles County Jail System, would work for and carry out the orders of DMM-1 from on or about October 22, 2012, through on or about May 10, 2013.

viii.   Co-conspirator Miguel Calderon, from outside the Los Angeles County Jail System, would work to direct activities within NCCF, MCJ, and Twin Towers on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about June 20, 2013, through on or about June 30, 2013.

ix.   Co-conspirator Ernesto Vargas, from outside the Los Angeles County Jail System, would work to direct activities within NCCF on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about October 1, 2013, through on or about July 6, 2014.

x.   Co-conspirator Miguel Rodriguez, from outside the Los Angeles County Jail System, would work to direct activities

1    within NCCF on behalf of DMM-2, from on or about July 6, 2014, until

2    on or about October 23, 2014.

3                    xi.  Co-conspirator Gilbert Parra, from both inside

4    and outside the Los Angeles County Jail System, would direct the

5    activities within NCCF on behalf of defendant JOSE LANDA-RODRIGUEZ

6    from on or about October 10, 2013, to on or about December 26, 2013.

7                    xii. Co-conspirator Gerardo Tapia, from outside the

8    Los Angeles County Jail System, would direct drug trafficking

9    activities outside the Los Angeles County Jail System on behalf of

10   DMM-2 from on or about April 18, 2014, through on or about May 9,

11   2014.

12                   xiii.    Co-conspirator Donato Gonzalez, from both

13   inside and outside the Los Angeles County Jail System, would direct

14   activities within and outside the Los Angeles County Jail System on

15   behalf of DMM-2 from on or about April 18, 2014, through on or about

16   May 9, 2014.

17           c.   Defendants HECTOR DUARTE, SAMANTHA RIVERA, and MARK

18   LANDEROS, and co-conspirators Miguel Garcia and Jonathan Verdeja, and

19   unindicted co-conspirator 2 ("UICC-2"), unindicted co-conspirator 3

20   ("UICC-3") unindicted co-conspirator 4 ("UICC-4"), and unindicted co-

21   conspirator 5 ("UICC-5"), would act as facilitators for one or more

22   full members of the Mexican Mafia, and would carry out specific

23   orders related to the criminal activities of the Mexican Mafia LACJ

24   Enterprise, including extortion and the sale of controlled

25   substances, in specific locations, including LACJ.

26                   i.   UICC-3, from inside the Los Angeles County Jail

27   System, would direct activities at MCJ and Twin Towers on behalf of

28

DMM-1 from on or about December 18, 2012, through on or about June 20, 2013.

        ii.  Co-conspirator Miguel Garcia, from inside the Los Angeles County Jail System, would direct activities at NCCF on behalf of DMM-1 from on or about April 5, 2013, through on or about April 12, 2013.

        iii. Unindicted co-conspirator 9 ("UICC-9"), from inside the Los Angeles County Jail System, would direct activities at MCJ and Twin Towers on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about June 23, 2013, through on or about July 3, 2013.

        iv.  Defendant HECTOR DUARTE, from inside the Los Angeles County Jail System, would direct activities at NCCF on behalf of DMM-2 from on or about July 6, 2014, through on or about November 10, 2014.

        v.  Defendant SAMANTHA RIVERA, from outside the Los Angeles County Jail System, would coordinate defendant JOSE LANDA-RODRIGUEZ'S dealings with other Mexican Mafia members from on or about June 20, 2013, through on or about December 18, 2015.

        vi.  Defendant MARK LANDEROS, from inside the Los Angeles County Jail System, would direct activities at MCJ and Twin Towers on behalf of defendant JOSE LANDA-RODRIGUEZ, from on or about July 24, 2013, through on or about June 5, 2014.

        vii. Co-conspirator Jonathan Verdeja, from inside the Los Angeles County Jail System, would direct activities at NCCF on behalf of defendant JOSE LANDA-RODRIGUEZ from on or about October 16, 2013, through on or about December 26, 2013.

//

//

1             viii.    UICC-2, from inside the Los Angeles County

2 Jail System, would direct activities at MCJ and Twin Towers on behalf

3 of defendant JOSE LANDA-RODRIGUEZ.

4            ix.  UICC-4, from inside the Los Angeles County Jail

5 System, would direct activities at NCCF on behalf of defendant JOSE

6 LANDA-RODRIGUEZ from on or about June 20, 2013, through on or about

7 June 30, 2013.

8            x.  UICC-5, from outside LACJ, would direct

9 activities at NCCF on behalf of DMM-2, from on or about August 22,

10 2015, through June 4, 2016.

11        d.  Defendants CECILIA VIRGEN and NANCY DUARTE, UICC-6,

12 and co-conspirators Laureen Garcia, Valerie Trejo, Genessis Blanco,

13 and Kelly Jo Bell, would act as secretaries for high-level Mexican

14 Mafia LACJ Enterprise associates, passing messages regarding,

15 facilitating communication about, and keeping records of the criminal

16 activities of the Mexican Mafia LACJ Enterprise, including extortion

17 and the sale of controlled substances.

18            i.  Defendant CECILIA VIRGEN would act as the

19 secretary for co-conspirator Daniel Cervantes for activities inside

20 the Los Angeles County Jail System from on or about December 18,

21 2012, through on or about May 22, 2013.

22           ii.  Co-conspirator Laureen Garcia would act as the

23 secretary for co-conspirator Ernesto Vargas for activities inside

24 NCCF from on or about October 1, 2013, through on or about November

25 1, 2013.

26           iii. Defendant NANCY DUARTE would act as the secretary

27 for defendant HECTOR DUARTE for activities at NCCF from on or about

28 July 6, 2014, through on or about October 23, 2014.

iv.   Co-conspirator Valerie Trejo would act as the secretary for UICC-3 for activities at MCJ and Twin Towers from on or about February 2013, through on or about June 20, 2013.

v.   Co-conspirator Kelly Jo Bell would act as a secretary for defendant ALVINO MUNOZ from August 19, 2015, through October 14, 2015.

vi.   Co-conspirator Genessis Blanco would act as a secretary for DMM-2 and UICC-6 for activities inside NCCF from on or about August 22, 2015, through on or about October 23, 2015.

vii. UICC-6 would act as a secretary for defendant MARK LANDEROS in January 2016.

e.   Unindicted co-conspirator 7 ("UICC-7") would carry out the orders of DMM-1, UICC-1, and UICC-3 to control Twin Towers from on or about July 17, 2012, through on or about June 20, 2013.

f.   Defendants VALENTIN CORDOVA and DAVID BERNARDINO, and co-conspirators Miguel Garcia, Jose Flores, Mark Levy, Frankie Megorado, Manuel Jimenez, Alavaro Leyva, Chris Ferreira, and Andrew Pineda, and unindicted co-conspirators Robert Ramirez, UICC-4, unindicted co-conspirator 8 ("UICC-8"), unindicted co-conspirator 10 ("UICC-10"), unindicted co-conspirator 11 ("UICC-11"), and unindicted co-conspirator 12 ("UICC-12"), would carry out the orders of the Mexican Mafia LACJ Enterprise within specific portions of the Los Angeles County Jail System, thereby facilitating the criminal activities of the Mexican Mafia LACJ Enterprise, including extortion and the sale of controlled substances.

i.   Co-conspirator Jose Flores would carry out the orders of defendant CECILIA VIRGEN in NCCF from on or about December 19, 2012, through on or about January 22, 2013.

25

ii.   UICC-8 would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about October 26, 2012, through on or about December 28, 2012.

iii. Co-conspirator Mark Levy would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about February 10, 2013, through on or about February 13, 2013.

iv.   Defendant VALENTIN CORDOVA would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about April 2, 2013, through on or about May 20, 2013.

v.   UICC-11 would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about March 25, 2013, through on or about May 23, 2013.

vi.   Co-conspirator Frankie Megorado would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about April 6, 2013, through on or about May 22, 2013, and would carry out the orders of co-conspirator Laureen Garcia inside NCCF from on or about May 23, 2013, through October 5, 2013.

vii. Co-conspirator Jose Olea would carry out the orders of defendant CECILIA VIRGEN inside NCCF from on or about April 7, 2013, through on or about April 13, 2013.

viii.    UICC-10 would carry out the orders of UICC-3 inside MCJ and Twin Towers from on or about December 30, 2012, through on or about May 30, 2013.

ix.   UICC-4 would carry out the orders of co-conspirator Miguel Calderon inside NCCF from on or about June 20, 2013, through on or about June 30, 2013.

//

//

26

1     x. Co-conspirator Manuel Jimenez would carry out the

2 orders of co-conspirator Laureen Garcia inside NCCF from on or about

3 October 1, 2013, through on or about November 1, 2013.

4     xi. Co-conspirator Alavaro Leyva would carry out the

5 orders of co-conspirator Laureen Garcia inside NCCF from on or about

6 October 2, 2013, through on or about October 5, 2013.

7     xii. Co-conspirator Chris Ferreira would carry out the

8 orders of defendant NANCY DUARTE inside NCCF from on or about July 6,

9 2014, through on or about July 25, 2014.

10    xiii. Co-conspirator Miguel Garcia would carry out

11 the orders of co-conspirator Ernesto Vargas inside NCCF from on or

12 about September 24, 2013, through on or about October 21, 2013, and

13 would carry out the orders of unindicted co-conspirator 52 ("UICC-

14 52") inside NCCF from in and around November 2016.

15    xiv. Defendant DAVID BERNARDINO would carry out the

16 orders of defendant NANCY DUARTE inside NCCF from at least no later

17 than September 1, 2014 through at least no earlier than September 6,

18 2014.

19    xv. Co-conspirator Andrew Pineda would carry out the

20 orders of co-conspirator Genessis Blanco inside NCCF from on or about

21 August 22, 2015, through on or about October 23, 2015.

22    xvi. Unindicted co-conspirator Robert Ramirez would

23 carry out the orders of co-conspirator Kelly Jo Bell at MCJ from on

24 or about August 19, 2015, through on or about October 14, 2015.

25    xvii. UICC-12 would carry out the orders of

26 defendant MARK LANDEROS in MCJ in January 2016.

27   g. Defendants MIRIAM MEZA, ANA MARTINEZ, and ADRIAN

28 ARAIZA, and co-conspirators Alondra Gomez, Alvaro Ruiz, Gail Ponce,

and Diana Martinez, and unindicted co-conspirators Kristen Ayala, unindicted co-conspirator 14 ("UICC-14"), unindicted co-conspirator 15 ("UICC-15"), and unindicted co-conspirator 16 ("UICC-16"), would assist Mexican Mafia LACJ Enterprise members and associates in directing activities inside and outside the Los Angeles County Jail System, thereby facilitating the criminal activities of the Mexican Mafia LACJ Enterprise, including extortion and the sale of controlled substances.

i.   Co-conspirator Alondra Gomez would assist co-conspirator Daniel Cervantes in collecting and laundering the proceeds of Mexican Mafia LACJ Enterprise activities.

ii.   UICC-14 would pass DMM-1's directions regarding the collection and laundering of the proceeds of Mexican Mafia LACJ Enterprise activities to co-conspirator Daniel Cervantes.

iii. Defendant MIRIAM MEZA would assist UICC-3 and defendant CECILIA VIRGEN in collecting proceeds of Mexican Mafia LACJ Enterprise activities.

iv.   Defendant ANA MARTINEZ would assist UICC-10 by obtaining "burnout" phones, arranging the smuggling of drugs into the Los Angeles County Jail System, and collecting money for UICC-3.

v.   Unindicted co-conspirator Kristen Ayala would assist defendant MARK LANDEROS in smuggling drugs into the Los Angeles County Jail System.

vi.   Co-conspirator Alvaro Ruiz would assist co-conspirator Donato Gonzales by organizing shipments of drugs into the Los Angeles County Jail System, and would assist defendant JOSE LANDA-RODRIGUEZ by passing messages.

1     vii. Defendant ADRIAN ARAIZA would assist co-

2 conspirator Daniel Cervantes by providing drugs to be smuggled into

3 the Los Angeles County Jail System.

4     viii. UICC-15 would assist UICC-3 by moving the

5 kitty money from co-conspirator Angel Sanchez's inmate trust account

6 to co-conspirator Valerie Trejo.

7     ix. co-conspirator Gail Ponce would pass defendant

8 HECTOR DUARTE's orders to defendant DAVID BERNARDINO.

9     x. UICC-16 would pass messages to and from UICC-12.

10     xi. Co-conspirator Diana Martinez would assist co-

11 conspirator Gerardo Tapia in trafficking controlled substances, and

12 in carrying out orders to commit acts of violence on behalf of

13 Mexican Mafia LACJ Enterprise members.

14   h. Defendants MARK LANDEROS, DAVID DIAZ, and ANA

15 MARTINEZ, and co-conspirators Luis Garica, Valerie Trejo, Kelly Jo

16 Bell, Marlon Cornejo, Angel Sanchez, Juan Reyes, Richard Bailey,

17 Michael Bennett, Edwin Ayala, and David Villalobos, and others known

18 and unknown to the Grand Jury, would carry out the orders and

19 business of the Mexican Mafia LACJ Enterprise in furtherance of its

20 criminal activities, including extortion and the sale of controlled

21 substances.

22     i. Defendant MARK LANDEROS and others known and

23 unknown to the Grand Jury would engage in acts of violence inside the

24 Los Angeles County Jail System to enforce Mexican Mafia rules and

25 discipline, to collect debts on behalf of the Mexican Mafia LACJ

26 Enterprise, including proceeds from the sale of controlled

27 substances, and to extort on behalf of the Mexican Mafia LACJ

28 Enterprise.

ii.   Defendant DAVID DIAZ and others known and unknown to the Grand Jury would engage in acts of violence outside of the Los Angeles County Jail System on behalf of defendant JOSE LANDA-RODRIGUEZ.

iii. Defendant ANA MARTINEZ, and co-conspirators Valerie Trejo, Kelly Jo Bell, and Richard Bailey, and others known and unknown to the grand jury would assist in the smuggling of drugs into the Los Angeles County Jail System.

iv.   Unindicted co-conspirators known and unknown to the Grand Jury would smuggle drugs into the Los Angeles County Jail System.

v.   Co-conspirators Marlon Cornejo, Juan Reyes, Michael Bennett, and Edwin Ayala, and others known and unknown to the grand jury would smuggle drugs within the Los Angeles County Jail System.

vi.   Co-conspirators Marlon Cornejo, Juan Reyes, Michael Bennett, and Edwin Ayala, and others known and unknown to the grand jury would smuggle written communications within the Los Angeles County Jail System.

vii. Co-conspirator Angel Sanchez would allow his inmate trust account to be used to move and launder Mexican Mafia LACJ Enterprise proceeds.

F.   OVERT ACTS

10.   In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants JOSE LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, ALVINO MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, CECILIA VIRGEN, NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO, MIRIAM MEZA, ANA

MARTINEZ, ADRIAN ARAIZA, and DAVID DIAZ, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Smuggling and Possession of Cocaine and Methamphetamine within LACJ and Collection of the Thirds Tax

Overt Act No. 1:   On or before September 10, 2012, J.M. possessed and distributed cocaine and methamphetamine within MCJ.

Overt Act No. 2:   On or before September 10, 2012, J.M. paid his thirds tax on the cocaine and methamphetamine to UICC-1.

Overt Act No. 3:   On September 10, 2012, co-conspirator Marlon Cornejo possessed J.M.'s thirds tax, consisting of approximately 2.25 grams of cocaine and .09 grams of methamphetamine, in order to give it to UICC-1.

Overt Act No. 4:   On September 10, 2012, J.M. possessed approximately .15 grams of cocaine within LACJ with intent to distribute.

Laundering of Money from LACJ

Overt Act No. 5:   From August 22, 2012, through at least May 9, 2013, co-conspirator Alondra Gomez opened and maintained a post office box for the purpose of collecting payments from Mexican Mafia LACJ Enterprise activities.

Overt Act No. 6:   On October 22, 2012, co-conspirator Daniel Cervantes met with a person he believed to be a criminal associate, but who was actually an undercover agent from Homeland Security Investigations (the "HSI UC"), to launder the proceeds of Mexican Mafia LACJ Enterprise activities.

<u>Overt Act No. 7:</u>   On October 22, 2012, co-conspirator Daniel Cervantes gave $9,239 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities to the HSI UC for the HSI UC to launder by negotiating the money orders in exchange

<u>Overt Act No. 8:</u>   On October 22, 2012, co-conspirator Daniel Cervantes received from the HSI UC approximately $8,315 in cash representing the proceeds from the negotiation of the money orders.

<u>Laundering of Money from LACJ</u>

<u>Overt Act No. 9:</u>   On November 5, 2012, co-conspirator Daniel Cervantes met with the HSI UC and gave approximately $11,032 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities to the HSI UC for the HSI UC to launder by negotiating the money orders in exchange for a fee.

<u>Overt Act No. 10:</u>   On November 6, 2012, co-conspirator Daniel Cervantes received from the HSI UC approximately $9,928 in cash representing the proceeds from the negotiation of the money orders.

<u>Assault of R.G. for Interfering with Drug Trafficking</u>

<u>Overt Act No. 11:</u>   Prior to December 6, 2012, defendant CECILIA VIRGEN ordered co-conspirator Jose Flores to have R.G. assaulted for violating Mexican Mafia rules by opening drugs that belonged to the Mexican Mafia LACJ Enterprise without authorization.

<u>Overt Act No. 12:</u>   On or before December 6, 2012, co-conspirator Jose Flores ordered that R.G. be assaulted for violating Mexican Mafia rules by opening drugs that belonged to the Mexican Mafia LACJ Enterprise without authorization.

<u>Overt Act No. 13:</u>   On December 6, 2012, unindicted co-conspirators assaulted R.G. on co-conspirator Jose Flores's orders.

<u>Overt Act No. 14:</u>   On December 20, 2012, in a recorded telephone call, defendant CECILIA VIRGEN advised co-conspirator Jose Flores that R.G. had been assaulted.

<u>Overt Act No. 15:</u>   On December 20, 2012, in a recorded telephone call, defendant CECILIA VIRGEN ordered that R.G. be assaulted again, and co-conspirator Jose Flores suggested that the assault be for 39 seconds.

<u>Laundering of Money from LACJ</u>

<u>Overt Act No. 16:</u>   On November 9, 2012, UICC-14 called co-conspirator Daniel Cervantes from LACJ, and in coded language during this recorded telephone call, co-conspirator Daniel Cervantes told UICC-14 that he had $13,000 in proceeds of Mexican Mafia LACJ Enterprise activities and asked what he should do with it.

<u>Overt Act No. 17:</u>   On November 9, 2012, UICC-14 asked DMM-1 what co-conspirator Daniel Cervantes should do with the $13,000.

<u>Overt Act No. 18:</u>   On November 9, 2012, in a recorded telephone conversation, UICC-14 passed on to co-conspirator Daniel Cervantes DMM-1's directions that co-conspirator Daniel Cervantes should launder all $13,000 and that $12,000 of Mexican Mafia LACJ Enterprise proceeds be given to DMM-1's wife.

<u>Overt Act No. 19:</u>   On December 6, 2012, co-conspirator Daniel Cervantes met with the HSI UC and gave approximately $13,000 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities in LACJ to the HSI UC for the HSI UC to launder by negotiating the money orders in exchange for a fee.

<u>Overt Act No. 20:</u>   On December 7, 2012, co-conspirator Daniel Cervantes received from the HSI UC approximately $10,237 in cash

representing the proceeds from the negotiation of the money orders and approximately $2,100 in uncashed money orders.

Overt Act No. 21:   On December 13, 2012, co-conspirator Daniel Cervantes arranged for the HSI UC to meet with co-conspirator Alondra Gomez for the purpose of laundering approximately $2,100 in money orders representing proceeds from Mexican Mafia LACJ Enterprise activities.

Overt Act No. 22:   On December 13, 2012, co-conspirator Alondra Gomez met with the HSI UC and negotiated approximately $2,100 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities in LACJ.

Extortion and Assault of J.D.

Overt Act No. 23:   On December 18, 2012, in a recorded telephone call, defendant CECILIA VIRGEN asked UICC-3 to collect a debt owed to her by J.D. or to assault J.D. if he did not pay.

Overt Act No. 24:   From December 18, 2012, through February 11, 2013, UICC-3 arranged for J.D. to be repeatedly assaulted in LACJ for failing to pay a debt.

Overt Act No. 25:   Prior to January 18, 2013, unindicted co-conspirator 18 ("UICC-18") allowed his LACJ inmate trust account to be used to collect the debt from J.D.

Overt Act No. 26:   On January 25, 2013, UICC-3 told defendant CECILIA VIRGEN that $200 from J.D. had been placed on UICC-18's LACJ inmate trust account.

Overt Act No. 27:   On January 29, 2013, in a recorded telephone call, defendant CECILIA VIRGEN asked UICC-3 if J.D. had paid his debt.

1    <u>Overt Act No. 28:</u>   On February 7, 2013, in a recorded telephone

2    call, UICC-3 instructed co-conspirator Valerie Trejo to pass a

3    message to defendant CECILIA VIRGEN that J.D. had not paid his debt,

4    and co-conspirator Valerie Trejo confirmed that she sent the message.

5    <u>Overt Act No. 29:</u>   On February 11, 2013, in a recorded

6    telephone call, UICC-3 again instructed co-conspirator Valerie Trejo

7    to tell defendant CECILIA VIRGEN that J.D. had not paid the debt.

8    <u>Overt Act No. 30:</u>   On February 11, 2013, in a recorded

9    telephone call, UICC-3 told defendant CECILIA VIRGEN that J.D. had

10   not paid the debt but had been assaulted, and UICC-3 and defendant

11   CECILIA VIRGEN discussed where they could find J.D. outside of LACJ.

12   <u>Extortion of L.O.</u>

13   <u>Overt Act No. 31:</u>   From December 17, 2012, through December 30,

14   2012, UICC-3 extorted approximately $2,000 worth of heroin from L.O.

15   <u>Overt Act No. 32:</u>   From December 19, 2012, through December 30,

16   2012, in recorded telephone calls from UICC-3, defendant CECILIA

17   VIRGEN discussed her plans to obtain drugs provided by L.O. as a

18   result of extortion and to have the drugs smuggled into LACJ.

19   <u>Smuggling of Heroin and Methamphetamine within LACJ</u>

20   <u>Overt Act No. 33:</u>   On December 19, 2012, UICC-3 arranged to

21   transport approximately 5.33 grams of black tar heroin and 1.65 grams

22   of a mixture or substance containing a detectable amount of

23   methamphetamine from MCJ to NCCF to be sold on behalf of the Mexican

24   Mafia LACJ Enterprise.

25   <u>Overt Act No. 34:</u>   On December 19, 2012, co-conspirator Juan

26   Reyes transported approximately 5.33 grams of black tar heroin and

27   1.65 grams of a mixture or substance containing a detectable amount

28

of methamphetamine from MCJ to NCCF in his body on behalf of the Mexican Mafia LACJ Enterprise.

Overt Act No. 35:   On December 23, 2012, in a recorded telephone call, defendant CECILIA VIRGEN informed UICC-3 that the black tar heroin and methamphetamine carried by co-conspirator Juan Reyes had been seized by law enforcement.

Assault and Extortion of S.M.

Overt Act No. 36:   Prior to December 21, 2012, defendant CECILIA VIRGEN ordered that S.M. be assaulted because he was in bad standing with the Mexican Mafia LACJ Enterprise.

Overt Act No. 37:   On December 21, 2012, unindicted co-conspirators assaulted S.M.

Smuggling of Heroin into LACJ

Overt Act No. 38:   From October 26, 2012, through October 31, 2012, in recorded telephone calls, UICC-8 and unindicted co-conspirator 19 ("UICC-19") arranged for an attorney, unindicted co-conspirator 20 ("UICC-20") to bring heroin into LACJ by hiding the heroin in a greeting card that UICC-19 would give to UICC-20 to pass to UICC-8.

Overt Act No. 39:   Prior to and on December 22, 2012, in recorded telephone calls, defendant CECILIA VIRGEN discussed with UICC-8 the plan to smuggle heroin into LACJ, and defendant CECILIA VIRGEN directed UICC-8 to allow her to add approximately one-half ounce of heroin into the heroin-filled greeting card.

Overt Act No. 40:   On December 24, 2012, in a recorded telephone conversation, UICC-8 and UICC-19 ordered approximately one and one-half ounces of heroin from unindicted co-conspirator 21

("UICC-21") and discussed that the destination for the heroin was LACJ.

Overt Act No. 41:    On December 25, 2012, UICC-19 purchased approximately one and one-half ounces of heroin from UICC-21.

Overt Act No. 42:    On December 28, 2012, as arranged by defendant CECILIA VIRGIN, UICC-8, UICC-19, UICC-20 attempted to smuggle a greeting card containing approximately 23.8 grams of heroin into LACJ, but were caught by LASD deputies.

Collection of the Kitty

Overt Act No. 43:    From July 14, 2012, through May 22, 2013, defendant MIRIAM MEZA collected kitty proceeds, drug proceeds, and other extortion proceeds from LACJ and placed that money onto the inmate trust accounts of unindicted co-conspirators UICC-3 and UICC-18.

Orders to Assault R.G. and "Stomper" from the Rockwood gang because of R.G.'s Interference with Drug Trafficking

Overt Act No. 44:    From December 29, 2012, through December 31, 2012, in recorded telephone calls from co-conspirator Jose Flores, defendant CECILIA VIRGEN ordered that R.G. be assaulted for protesting his previous assault and that a Sureno known as "Stomper" from the Rockwood gang be assaulted for speaking up on behalf of R.G.

Money Laundering Using an Inmate Trust Account

Overt Act No. 45:    On or before December 27, 2012, UICC-7 directed his subordinates to put the kitty and drug money onto the inmate trust account of co-conspirator Angel Sanchez.

Overt Act No. 46:    From December 23, 2012, through January 31, 2013, -conspirator Angel Sanchez allowed his LACJ inmate trust

account to be used by the Mexican Mafia LACJ Enterprise to launder the kitty and drug money.

Overt Act No. 47:   On or before January 25, 2013, defendant MARK LANDEROS sent a kite to inform UICC-3 that the kitty money was being placed on the LACJ inmate trust account of -conspirator Angel Sanchez.

Overt Act No. 48:   From December 23, 2012, through January 19, 2013, in recorded telephone conversations, -conspirator Angel Sanchez and UICC-15 discussed withdrawing the Mexican Mafia LACJ Enterprise's money from -conspirator Angel Sanchez's LACJ inmate trust account.

Overt Act No. 49:   From on or before January 11, 2013, through January 31, 2013, UICC-15, withdrew the kitty and drug money from -conspirator Angel Sanchez's LACJ inmate trust account to be given to co-conspirator Valerie Trejo for UICC-3.

Laundering of Money from LACJ

Overt Act No. 50:   On January 9, 2013, co-conspirator Daniel Cervantes met with and gave approximately $10,046 in money orders representing proceeds of Mexican Mafia LACJ Enterprise activities to the HSI UC for the HSI UC to launder by negotiating the money orders in exchange for a fee.

Overt Act No. 51:   On January 10, 2013, co-conspirator Daniel Cervantes received from the the HSI UC approximately $9,414 in cash representing the proceeds from the negotiation of the money orders.

Attempted Smuggling of Marijuana and Correspondence Related to Extortion and Money Laundering into LACJ

Overt Act No. 52:   On January 18, 2013, unindicted co-conspirator 22 ("UICC-22") transported, in his body, marijuana, a

kite discussing extortion and money laundering, and three roll calls from UICC-7 intended for UICC-1.

Smuggling of Heroin and Methamphetamine into LACJ

Overt Act No. 53:  From December 19, 2012, through January 22, 2013, defendant CECILIA VIRGEN, co-conspirator Jose Flores, UICC-3 and unindicted co-conspirator 23 ("UICC-23"), arranged to smuggle approximately 64.6 grams of heroin and approximately 36.7 grams of methamphetamine into LACJ on behalf of DMM-1.

Overt Act No. 54:  On January 19, 2013, at defendant CECILIA VIRGEN's direction, UICC-23 possessed and smuggled in his body at least 64.6 grams of heroin and 36.7 grams of methamphetamine into LACJ for DMM-1.

Overt Act No. 55:  On January 22, 2013, UICC-23 gave an unknown amount of a controlled substance to UICC-3 in LACJ.

Possession of Methamphetamine, Cash, and Firearms

Overt Act No. 56:  On January 29, 2013, defendant ADRIAN ARAIZA possessed with intent to distribute approximately 6,317.7 grams of methamphetamine, on behalf of DMM-1.

Overt Act No. 57:  On January 29, 2013, defendant ADRIAN ARAIZA possessed two firearms in order to protect the approximately 6,317.7 grams of methamphetamine.

Overt Act No. 58:  On January 29, 2013, defendant defendant ADRIAN ARAIZA possessed approximately $444,372 in drug proceeds on behalf of DMM-1.

Attempted Murder of M.A.

Overt Act No. 59:  On February 7, 2013, co-conspirator Luis Garcia attempted to kill M.A. in LACJ because M.A. was on the "Green Light" list.

Assault and Extortion of S.M.

Overt Act No. 60:   From February 10, 2013, through February 13, 2013, in recorded telephone calls, defendant CECILIA VIRGEN and co-conspirator Mark Levy arranged for S.M. to be assaulted until he made a payment to the Mexican Mafia LACJ Enterprise.

Overt Act No. 61:   On February 13, 2013, unindicted coconspirators assaulted S.M. because of his bad standing with the Mexican Mafia LACJ Enterprise.

Smuggling of Methamphetamine, Heroin, and Marijuana into LACJ

Overt Act No. 62:   From January 22, 2013, through February 28, 2013, defendant CECILIA VIRGEN, co-conspirators Valerie Trejo, Richard Bailey, Richard Griego, and UICC-3 arranged for heroin, methamphetamine and marijuana to be smuggled to UICC-3 in LACJ on behalf of DMM-1.

Overt Act No. 63:   On February 12, 2013, co-conspirator Richard Bailey packaged methamphetamine, heroin, and marijuana for unindicted co-conspirator Richard Griego to smuggle into LACJ.

Overt Act No. 64:   On February 28, 2013, unindicted co-conspirator Richard Griego possessed in his body and attempted to smuggle approximately 26.2 grams of pure methamphetamine, approximately 62.9 grams of heroin, and approximately 11.75 grams of marijuana into LACJ for UICC-3 and DMM-1.

Assault of I.E. for Taking Mexican Mafia LACJ Enterprise Extortion Proceeds and for Cooperating with Law Enforcement

Overt Act No. 65:   On March 15, 2013, unindicted co-conspirators assaulted I.E. at the direction of defendant VALENTIN CORDOVA.

1    <u>Overt Act No. 66:</u>   On April 12, 2013, in a recorded telephone

2    call, defendant VALENTIN CORDOVA reported to defendant CECILIA VIRGEN

3    that he had ordered that I.E. be assaulted because I.E. had been

4    taking Mexican Mafia LACJ Enterprise proceeds and had told LACJ

5    deputies about a previous assault on him, so that defendant CECILIA

6    VIRGEN could inform other facilities that I.E. should be assaulted.

7    <u>Assault and Extortion of S.M.</u>

8    <u>Overt Act No. 67:</u>   Prior to March 21, 2013, defendant CECILIA

9    VIRGEN ordered that S.M. be assaulted until he made a payment to the

10   Mexican Mafia LACJ Enterprise.

11   <u>Overt Act No. 68:</u>   On March 21, 2013, unindicted co-

12   conspirators assaulted S.M. because of his bad standing with the

13   Mexican Mafia LACJ Enterprise.

14   <u>Assault of R.K. and Planned Assault of G.S. for Cooperating with Law</u>

15   <u>Enforcement</u>

16   <u>Overt Act No. 69:</u>   On or before March 25, 2013, UICC-11 ordered

17   that R.K. be assaulted because UICC-11 suspected that R.K. had

18   cooperated with law enforcement.

19   <u>Overt Act No. 70:</u>   On March 25, 2013, unindicted co-

20   conspirators assaulted R.K. on UICC-11's orders because of R.K.'s

21   suspected cooperation with law enforcement.

22   <u>Overt Act No. 71:</u>   From April 6, 2013, through May 21, 2013,

23   UICC-3 and defendant CECILIA VIRGEN discussed, in recorded telephone

24   calls, locating G.S. in order to have him assaulted as discipline for

25   his suspected cooperation with law enforcement.

26   //

27   //

28   //

Assault of A.R. in Order to Commit Extortion

Overt Act No. 72:   On March 31, 2013, defendant MARK LANDEROS and unindicted co-conspirator 25 ("UICC-25") assaulted A.R. because they believed A.R. was in LACJ for a sexual assault.

Assault and Extortion of J.M.-2

Overt Act No. 73:   On or before April 2, 2013, defendant VALENTIN CORDOVA ordered the assault of J.M.-2 because J.M.-2 lied about his identity to the Mexican Mafia LACJ Enterprise.

Overt Act No. 74:   On April 2, 2013, unindicted co-conspirators assaulted J.M.-2 because of his bad standing with the Mexican Mafia LACJ Enterprise.

Overt Act No. 75:   On April 6, 2013, in a recorded telephone call, defendant CECILIA VIRGEN ordered that J.M.-2 be assaulted until he pays his debt to the Mexican Mafia LACJ Enterprise.

Extortion of J.M.-3

Overt Act No. 76:   From April 6, 2013, through May 20, 2013, in recorded telephone conversations, defendant CECILIA VIRGEN spoke to defendant VALENTIN CORDOVA and co-conspirators Frankie Megorado and UICC-3 about finding J.M.-3 in LACJ to collect a debt that J.M.-3 owed to the Mexican Mafia LACJ Enterprise.

Overt Act No. 77:   On April 6, 2013, in a recorded telephone conversation, defendant VALENTIN CORDOVA told defendant CECILIA VIRGEN he would look for J.M.-3.

Overt Act No. 78:   On May 16, 2013, in a recorded telephone conversation, UICC-3 told defendant CECILIA VIRGEN that J.M.-3 had paid his debt to the Mexican Mafia.

Overt Act No. 79:   On May 19, 2013, in a recorded telephone conversation, defendant CECILIA VIRGEN told co-conspirator Frankie

1  Megorado that J.M.-3 still owed money to the Mexican Mafia, but that

2  she was going to allow J.M.-3 to pay $400 instead of $600, and co-

3  conspirator Frankie Megorado provided J.M.-3's name and booking

4  number to defendant CECILIA VIRGEN so that he could be located.

5  <u>Assault of Co-conspirator Miguel Garcia for not Remitting the Proper</u>

6  <u>Drug and Extortion Proceeds</u>

7      <u>Overt Act No. 80:</u>   From April 5, 2013, through April 12, 2013,

8  in recorded telephone conversations, defendant CECILIA VIRGEN ordered

9  co-conspirator Jose Olea to assault co-conspirator Miguel Garcia and

10  to replace co-conspirator Miguel Garcia as the shot-caller of the 700

11  floor of NCCF because co-conspirator Miguel Garcia had not been

12  properly remitting extortion and drug proceeds and because co-

13  conspirator Miguel Garcia's wife had disrespected defendant CECILIA

14  VIRGEN during the dispute over the proceeds.

15      <u>Overt Act No. 81:</u>   On April 9, 2013, unidentified co-

16  conspirators assaulted co-conspirator Miguel Garcia as directed by

17  co-conspirator Jose Olea.

18      <u>Overt Act No. 82:</u>   On April 10, 2013, in a recorded telephone

19  conversation, defendant CECILIA VIRGEN directed co-conspirator Jose

20  Olea to continue assaulting co-conspirator Miguel Garcia until co-

21  conspirator Miguel Garcia surrendered the roll calls, the address to

22  which to send kitty and other money, phone numbers, and calling cards

23  to co-conspirator Jose Olea.

24      <u>Overt Act No. 83:</u>   On April 12, 2013, after co-conspirator Jose

25  Olea told defendant CECILIA VIRGEN in a recorded telephone call that

26  co-conspirator Miguel Garcia had complied, defendant CECILIA VIRGEN

27  ordered that co-conspirator Miguel Garcia be assaulted until he left

28  the 700 floor of NCCF.

1       Overt Act No. 84:  On April 12, 2013, co-conspirator Jose Olea

2  arranged for co-conspirator Miguel Garcia to be assaulted again.

3       Overt Act No. 85:  On April 12, 2013, unidentified co-

4  conspirators assaulted co-conspirator Miguel Garcia as directed by

5  co-conspirator Jose Olea.

6  Assault of L.M. for Attempting to Evade Extortion

7       Overt Act No. 86:  On April 23, 2013, co-conspirators Mark

8  Martinez, Amo West, Ramiro Andrade, Oswaldo Quintero, Nicholas

9  Escarcega, Christian Fuentes, Francisco Ruiz, and Jose Vera assaulted

10  L.M. in order to maintain Mexican Mafia LACJ Enterprise discipline

11  and punish L.M. for attempting to evade extortion.

12       Overt Act No. 87:  On April 23, 2013, unknown co-conspirators

13  moved the unconscious body of L.M. in order to prevent the detection

14  of the beating of L.M.

15       Overt Act No. 88:  On April 23, 2013, unindicted co-conspirator

16  Ramiro Andrade and other unknown co-conspirators cleaned blood and

17  other evidence of an assault from the location of the beating of L.M.

18  to prevent the detection of the beating of L.M..

19  Assaults of J.V. and M.M.F.

20       Overt Act No. 89:  On April 28, 2013, an unindicted co-

21  conspirator assaulted J.V. for volunteering for and backing out of an

22  agreed upon assault.

23       Overt Act No. 90:  On April 28, 2013, unindicted co-

24  conspirators assaulted M.M.F. for violating a Mexican Mafia LACJ

25  Enterprise rule against associating with African-American inmates.

26  Laundering of Money from LACJ

27       Overt Act No. 91:  On May 9, 2013, co-conspirator Daniel

28  Cervantes met with and gave the HSI UC approximately $7,976 in money

orders representing proceeds of Mexican Mafia LACJ Enterprise
activities for the HSI UC to launder by negotiating the money orders
in exchange for a fee.

Overt Act No. 92:   On May 10, 2013, co-conspirator Daniel
Cervantes received from the ICE UC $7,178 in cash representing
proceeds from the negotiation of the money orders.

Possession of Methamphetamine and Mexican Mafia LACJ Enterprise
Correspondence Regarding Extortion in LACJ

Overt Act No. 93:   On May 13, 2013, in LACJ, co-conspirator
Michael Bennett possessed inside his body approximately 5.5 grams of
methamphetamine, which he intended to give to UICC-1.

Overt Act No. 94:   On May 13, 2013, co-conspirator Michael
Bennett carried a message regarding extortion and leadership within
LACJ in his body from UICC-3 intended for UICC-1.

Overt Act No. 95:   On May 13, 2013, UICC-3 reported to UICC-1
that MCJ had paid $1,500 in kitty money, that he had fined a Sureno
$600 and ordered that the Sureno be assaulted for losing drugs, and
identified various other shot-callers within LACJ.

Possession of Cocaine and Methamphetamine and Correspondence Related
to Drug Trafficking and Extortion

Overt Act No. 96:   On May 15, 2013, in LACJ, co-conspirator
Edwin Ayala possessed with the intent to distribute to others on
behalf of the Mexican Mafia LACJ Enterprise approximately .6 grams of
cocaine base in the form of crack cocaine and approximately .54 grams
of methamphetamine.

Overt Act No. 97:   On May 15, 2013, co-conspirator Edwin Ayala
possessed two kites from UICC-11 intended for UICC-3 and unindicted
co-conspirator 27 ("UICC-27").

1    <u>Conspiracy to Extort and Assault J.J.</u>

2      <u>Overt Act No. 98:</u>  On May 17, 2013, in a recorded telephone

3 call, defendants CECILIA VIRGEN and VALENTIN CORDOVA, and co-

4 conspirator Frankie Megorado, discussed having J.J. assaulted for

5 interfering with the orderly administration of Mexican Mafia LACJ

6 Enterprise operations, including the handling of drug and extortion

7 proceeds.

8      <u>Overt Act No. 99:</u>  On May 20, 2013, in a recorded telephone

9 call, defendant CECILIA VIRGEN directed co-conspirator Frankie

10 Megorado to arrange the assault of J.J. in order to maintain Mexican

11 Mafia LACJ Enterprise discipline.

12      <u>Overt Act No. 100:</u>  On May 20, 2013, in a recorded telephone

13 call, co-conspirator Frankie Megorado agreed to arrange the assault

14 of J.J. as directed by defendant CECILIA VIRGEN.

15 <u>Possession of Mexican Mafia LACJ Enterprise Records</u>

16      <u>Overt Act No. 101:</u>  On May 22, 2013, defendant CECILIA VIRGEN

17 possessed records of the Mexican Mafia LACJ Enterprise's racketeering

18 activities in LACJ, including drug trafficking and extortion.

19 <u>Smuggling of Methamphetamine, Heroin and Marijuana into LACJ</u>

20      <u>Overt Act No. 102:</u>  From May 22, 2013, through May 30, 2013, in

21 recorded telephone conversations, UICC-10 and defendant ANA MARTINEZ

22 coordinated the smuggling of heroin, methamphetamine, and marijuana

23 to UICC-3 in LACJ; UICC-10 directed defendant ANA MARTINEZ to mark

24 the drugs with "Kahn" to indicate that they were for UICC-3; and

25 UICC-10 directed defendant ANA MARTINEZ to package the drugs in the

26 cutoff fingers of black latex gloves.

27 //

28 //

1      <u>Overt Act No. 103:</u>  On May 23, 2013, defendant ANA MARTINEZ

2  obtained heroin, methamphetamine, and marijuana from an unknown

3  supplier and packaged the drugs for smuggling into LACJ.

4      <u>Overt Act No. 104:</u>  From May 2013 through August 7, 2013,

5  defendant ANA MARTINEZ possessed digital scales and narcotics

6  packaging to facilitate the smuggling of drugs into LACJ on behalf of

7  the Mexican Mafia LACJ Enterprise.

8  <u>Money Laundering</u>

9      <u>Overt Act No. 105:</u>  On May 24, 2013, in a recorded telephone

10  conversation, UICC-10 directed defendant ANA MARTINEZ to transfer

11  $500 of Mexican Mafia LACJ Enterprise drug money to co-conspirator

12  Valerie Trejo.

13      <u>Overt Act No. 106:</u>  On May 24, 2013, defendant ANA MARTINEZ

14  transferred $500 of Mexican Mafia LACJ Enterprise drug money to co-

15  conspirator Valerie Trejo via money order.

16  <u>Identity Theft and Access Device Fraud</u>

17      <u>Overt Act No. 107:</u>  From May 2013 through at least August 2013,

18  defendant ANA MARTINEZ obtained identity profiles, opened fraudulent

19  Verizon phone accounts based on those profiles, and provided those

20  phone numbers to UICC-10 to give to other Mexican Mafia LACJ

21  Enterprise associates so that they could carry out Mexican Mafia LACJ

22  Enterprise business by making free phone calls.

23      <u>Overt Act No. 108:</u>  On August 7, 2013, defendant ANA MARTINEZ

24  possessed in her residence hundreds of stolen identity profiles to

25  use to open fraudulent phone accounts to further Mexican Mafia LACJ

26  Enterprise communications to and from LACJ.

27  //

28  //

1  <u>Defendant JOSE LANDA-RODRIGUEZ takes over Mexican Mafia LACJ</u>

2  <u>Enterprise Operations, Including Drug Trafficking and Extortion</u>

3      <u>Overt Act No. 109:</u>  Beginning on June 21, 2013, following the

4  death of DMM-1, defendant JOSE LANDA-RODRIGUEZ took over all Mexican

5  Mafia LACJ Enterprise operations within LACJ.

6      <u>Overt Act No. 110:</u>  Beginning June 21, 2013, following the death

7  of DMM-1, UICC-9 assumed a position as a top lieutenant to defendant

8  JOSE LANDA-RODRIGUEZ for running Mexican Mafia LACJ Enterprise

9  operations in LACJ.

10     <u>Overt Act No. 111:</u>  Beginning June 21, 2013, following the death

11 of DMM-1, co-conspirator Miguel Calderon assumed a position as an

12 out-of-custody "secretary" for defendant JOSE LANDA-RODRIGUEZ to

13 facilitate Mexican Mafia LACJ Enterprise operations in LACJ.

14     <u>Overt Act No. 112:</u>  Beginning June 21, 2013, following the death

15 of DMM-1, UICC-4 took over as the shot-caller of the 800 and 900

16 dorms in NCCF to run Mexican Mafia LACJ Enterprise operations for

17 defendant JOSE LANDA-RODRIGUEZ.

18     <u>Overt Act No. 113:</u>  Beginning June 26, 2013, following the death

19 of DMM-1, co-conspirator Miguel Garcia took over as the shot-caller

20 of the 500, 600, and 700 dorms in NCCF to run Mexican Mafia LACJ

21 Enterprise operations for defendant JOSE LANDA-RODRIGUEZ.

22     <u>Overt Act No. 114:</u>  On June 24, 2013, defendant JOSE LANDA-

23 RODRIGUEZ told defendant SAMANTHA RIVERA that he was taking over all

24 of LACJ and directed defendant SAMANTHA RIVERA to inform co-

25 conspirator Miguel Calderon.

26     <u>Overt Act No. 115:</u>  From June 24, 2013, through at least

27 December 18, 2015, defendant SAMANTHA RIVERA passed communications

28 from defendant JOSE LANDA-RODRIGUEZ to other Mexican Mafia members.

1    <u>Overt Act No. 116:</u>  On June 28, 2013, co-conspirator Miguel
2    Calderon directed UICC-9 to send the kitty money to a post office box
3    that he controlled and to send the drug and fine money to another
4    post office box that he controlled.

5    <u>Overt Act No. 117:</u>  On June 23, 2013, July 6, 2013, and July 26,
6    2013, co-conspirator Miguel Calderon made deposits of approximately
7    $200 in kitty proceeds into the LACJ inmate trust account of
8    defendant JOSE LANDA-RODRIGUEZ.

9    <u>Smuggling of Methamphetamine into LACJ</u>

10    <u>Overt Act No. 118:</u>  From July 24, 2013, through August 14, 2013,
11    defendant MARK LANDEROS and unindicted co-conspirators Kristen Ayala,
12    Jonathan Rodriguez, Bryanna McCullah, Juan NMN Garcia, and unindicted
13    co-conspirator 31 ("UICC-31") arranged to smuggle approximately one
14    ounce of methamphetamine and one ounce of marijuana into LACJ.

15    <u>Overt Act No. 119:</u>  On July 25, 2013, in a recorded telephone
16    conversation, defendant MARK LANDEROS asked UICC-31 to smuggle drugs
17    into LACJ.

18    <u>Overt Act No. 120:</u>  On August 3, 2013, in a recorded telephone
19    conversation between defendant MARK LANDEROS and unindicted co-
20    conspirators Kristen Ayala and Juan NMN Garcia, defendant MARK
21    LANDEROS asked unindicted co-conspirator Juan NMN Garcia to supply
22    methamphetamine and marijuana, and unindicted co-conspirator Juan NMN
23    Garcia agreed to do so and gave prices for the drugs.

24    <u>Overt Act No. 121:</u>  On August 13, 2013, in a recorded telephone
25    conversation, defendant MARK LANDEROS spoke to unindicted co-
26    conspirator Jonathan Rodriguez and gave him instructions regarding
27    the drugs to be smuggled into LACJ.

28

Overt Act No. 122:  On August 14, 2013, acting on defendant MARK LANDEROS' instructions, unindicted co-conspirator Jonathan Rodriguez attempted to smuggle into LACJ approximately 22.7 grams of methamphetamine inside his body.

Juan Reyes Appointed as Shot-Caller for 800 Floor of NCCF

Overt Act No. 123:  On or before August 7, 2013, co-conspirator Frankie Megorado sent a kite to co-conspirator Juan Reyes appointing co-conspirator Juan Reyes as shot-caller for the 800 floor of MCJ on behalf of the Mexican Mafia LACJ Enterprise, and providing instructions regarding extortion and discipline.

Smuggling of Heroin within LACJ

Overt Act No. 124:  On September 24, 2013, unindicted co-conspirator 32 ("UICC-32") attempted to smuggle .39 grams of heroin from Twin Towers to co-conspirator Miguel Garcia at NCCF.

Laureen Garcia Acts as the Secretary for NCCF and Manuel Jimenez Acts as a Shot-Caller for NCCF by imposing Discipline and Collecting Extortion Proceeds and Laundering Them

Overt Act No. 125:  In October 2013, co-conspirator Laureen Garcia served as the Mexican Mafia LACJ Enterprise secretary for NCCF and in that capacity ordered assaults as discipline and for violations of Mexican Mafia rules, collected "Green Dot" numbers representing proceeds from Mexican Mafia LACJ Enterprise extortion activities from co-conspirator Manuel Jimenez, and directed co-conspirator Manuel Jimenez to send extortion money to a post office box that co-conspirator Laureen Garcia controlled.

Overt Act No. 126:  On October 3, 2013, in a recorded telephone conversation, co-conspirator Laureen Garcia appointed co-conspirator Manuel Jimenez and an unindicted co-conspirator known as "Fatboy"

1  from the Blythe Street gang to run Mexican Mafia LACJ Enterprise

2  activities in parts of NCCF.

3      Overt Act No. 127:  On October 7, 2013, in a recorded telephone

4  conversation, co-conspirator Manuel Jimenez provided to co-

5  conspirator Laureen Garcia the number to a Green Dot card/account

6  that contained $100 in Mexican Mafia LACJ Enterprise proceeds.

7      Overt Act No. 128:  On October 11, 2013, in a recorded telephone

8  conversation, co-conspirator Laureen Garcia gave the post office box

9  address for kitty money to co-conspirator Manuel Jimenez.

10     Overt Act No. 129:  On October 12, 2013, in a recorded telephone

11 conversation, co-conspirator Laureen Garcia ordered co-conspirator

12 Alavaro Leyva to fine a Sureno known as "Oso" $600 for violating

13 Mexican Mafia LACJ Enterprise rules.

14     Overt Act No. 130:  On October 12, 2013, in a recorded telephone

15 conversation, co-conspirator Alavaro Leyva told co-conspirator

16 Laureen Garcia that he would fine the Sureno known as "Oso" $600 and

17 have him assaulted three times for 39 seconds, and co-conspirator

18 Laureen Garcia agreed.

19     Overt Act No. 131:  On October 14, 2013, in a recorded telephone

20 conversation, co-conspirator Laureen Garcia gave the post office box

21 address for kitty money to co-conspirator Alavaro Leyva.

22     Overt Act No. 132:  On October 14, 2013, in a recorded telephone

23 conversation, co-conspirator Alavaro Leyva told co-conspirator

24 Laureen Garcia about inmates in NCCF who were causing problems and

25 suggested that they be fined $1,000.

26     Overt Act No. 133:  On October 14, 2013, in a recorded telephone

27 conversation, co-conspirator Laureen Garcia agreed to the $1,000

28

fines for Oso and other inmates who were causing problems in NCCF and ordered that they be assaulted as well.

Overt Act No. 134:  On October 27, 2013, co-conspirator Laureen Garcia put $50 on the inmate trust account of defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 135:  On November 1, 2013, co-conspirator Laureen Garcia possessed sixty-seven money orders representing $3,240 in Mexican Mafia LACJ Enterprise proceeds.

Assault of Frankie Megorado for Failing to Run Mexican Mafia LACJ Enterprise Drug Trafficking and Extortion, Properly

Overt Act No. 136:  On or before October 2, 2013, in a recorded telephone conversation, co-conspirator Alavaro Leyva told co-conspirator Laureen Garcia that co-conspirator Frankie Megorado should be assaulted because he was not running Mexican Mafia LACJ Enterprise operations properly, including by not remitting the proper amount of drug and extortion proceeds.

Overt Act No. 137:  On October 2, 2013, in a recorded telephone conversation, co-conspirator Laureen Garcia ordered co-conspirator Alavaro Leyva to have co-conspirator Frankie Megorado assaulted because he was not running Mexican Mafia LACJ Enterprise operations properly.

Overt Act No. 138:  On or after October 2, 2013, co-conspirator Alavaro Leyva ordered that co-conspirator Frankie Megorado be assaulted.

Overt Act No. 139:  On October 5, 2013, unindicted co-conspirators assaulted co-conspirator Frankie Megorado.

//

//

Greenlighting of Rafael Carrillo

Overt Act No. 140:  On or before October 10, 2013, defendant
JOSE LANDA-RODRIGUEZ ordered that UICC-1 be seriously assaulted for
undermining co-conspirator Gilbert Parra's authority to collect
extortion and proceeds.

Overt Act No. 141:  On October 10, 2013, co-conspirator Gilbert
Parra passed on defendant JOSE LANDA-RODRIGUEZ' order that UICC-1 be
seriously assaulted to maintain the efficiency of the Mexican Mafia
LACJ Enterprise's extortion and drug trafficking activities.

Overt Act No. 142:  On October 14, 2013, co-conspirator Gilbert
Parra attempted to pass on to NCCF orders that UICC-1 be seriously
assaulted.

Overt Act No. 143:  On October 14, 2013, UICC-9 attempted to
smuggle into NCCF kites containing orders and instructions from co-
conspirator Gilbert Parra and JOSE LANDA-RODRIGUEZ.

Conspiracy to Assault J.J. for Interfering with Drug Trafficking and
Extortion

Overt Act No. 144:  From October 10, 2013 through October 21,
2013, defendant JOSE LANDA-RODRIGUEZ and co-conspirator Ernesto
Vargas ordered that J.J. be assaulted for undermining co-conspirator
Miguel Garcia's authority to collect extortion and drug proceeds.

Overt Act No. 145:  On or before October 23, 2013, J.J. was
assaulted on the orders of co-conspirator Ernesto Vargas in order to
maintain the efficiency of Mexican Mafia LACJ Enterprise extortion
and drug trafficking activities.

Overt Act No. 146:  On October 23, 2013, in a recorded telephone
conversation, co-conspirators Ernesto Vargas and Miguel Garcia

discussed J.J.'s assault as discipline for questioning co-conspirator Miguel Garcia's status in the Mexican Mafia LACJ Enterprise.

Jonathan Verdeja Facilitates Mexican Mafia LACJ Enterprise Activities at NCCF Including Drug Trafficking, Extortion, and Related Money Laundering

Overt Act No. 147:  From about October 16, 2013, through December 26, 2013, co-conspirator Jonathan Verdeja acted as the facilitator for NCCF on behalf of the Mexican Mafia LACJ Enterprise; co-conspirator Jonathan Verdeja coordinated and collected kitty money and oversaw the distribution of drugs in NCCF.

Overt Act No. 148:  On October 17, 2013, in recorded telephone conversations, co-conspirator Jonathan Verdeja called unindicted co-conspirator 33 ("UICC-33"), who gave the post office box address for Mexican Mafia LACJ Enterprise money and payments to co-conspirator Jonathan Verdeja, and co-conspirator Jonathan Verdeja agreed to send the payments to that address and directed UICC-33 to pass messages through co-conspirator Jonathan Verdeja's secretary, unindicted co-conspirator 34 ("UICC-34").

Overt Act No. 149:  On October 18, 2013, in a recorded telephone conversation, co-conspirator Jonathan Verdeja told UICC-34 to open a post office box, told UICC-34 that he will send kitty money to her, and told UICC-34 to put the money on his inmate trust account.

Overt Act No. 150:  On October 19, 2013, in a recorded telephone conversation, co-conspirator Jonathan Verdeja told UICC-34 to give the post office box address to NCCF shot-callers who will be calling her.

//

//

1   <u>Overt Act No. 151:</u>  On October 22, 2013, in a recorded telephone
2   conversation, co-conspirator Jonathan Verdeja told UICC-34 how to
3   instruct NCCF shot-callers to properly fill out money orders.

4   <u>Overt Act No. 152:</u>  On October 29, 2013, in a recorded telephone
5   conversation, co-conspirator Jonathan Verdeja told UICC-34 to give
6   the post office box address to "Greedy" and "Laughing Boy;" UICC-34
7   told co-conspirator Jonathan Verdeja that she had already received
8   one money order, that she was unhappy that her name was on it, and
9   that she preferred to deal in Green Dot numbers.

10  <u>Overt Act No. 153:</u>  On October 30, 2013, in a recorded telephone
11  conversation, co-conspirator Jonathan Verdeja told UICC-34 that she
12  will be receiving twenty-eight money orders representing proceeds of
13  Mexican Mafia LACJ Enterprise activities.

14  <u>Overt Act No. 154:</u>  On November 10, 2013, in a recorded
15  telephone conversation, UICC-34 told co-conspirator Jonathan Verdeja
16  that she had received kitty payments from dorms 822 and 823, and co-
17  conspirator Jonathan Verdeja told her to cash them.

18  <u>Overt Act No. 155:</u>  On November 15, 2013, in a recorded
19  telephone conversation, an unidentified female co-conspirator told
20  co-conspirator Jonathan Verdeja that she had eight money orders
21  representing Mexican Mafia LACJ Enterprise proceeds and co-
22  conspirator Jonathan Verdeja told the unidentified female co-
23  conspirator to keep two for herself and he would tell her what to do
24  with the rest.

25  <u>Overt Act No. 156:</u>  On November 19, 2013, in a recorded
26  telephone conversation, co-conspirator Jonathan Verdeja told
27  unindicted co-conspirator 35 ("UICC-35") that more money orders will
28  be sent and that they are important.

1    <u>Overt Act No. 157:</u>  On November 21, 2013, in a recorded
2 telephone conversation, co-conspirator Jonathan Verdeja reported on
3 how things were going at NCCF to co-conspirator Gilbert Parra and
4 told unindicted co-conspirator 36 ("UICC-36") to give money orders to
5 co-conspirator Gilbert Parra.

6    <u>Overt Act No. 158:</u>  On December 1, 2013, in a recorded telephone
7 conversation, co-conspirator Jonathan Verdeja told UICC-35 that she
8 will be receiving more Green Dot numbers and UICC-35 told co-
9 conspirator Jonathan Verdeja that she had five Green Dot numbers and
10 one money order.

11    <u>Overt Act No. 159:</u>  On December 4, 2013, in a recorded telephone
12 conversation, UICC-35 told co-conspirator Jonathan Verdeja that she
13 had one Green Dot number, five money orders, and one money-gram and
14 that her Green Dot account had been frozen for potential money
15 laundering.

16    <u>Overt Act No. 160:</u>  On December 8, 2013, in a recorded telephone
17 conversation, UICC-35 reported to co-conspirator Jonathan Verdeja
18 that she had ten money orders and one money-gram and co-conspirator
19 Jonathan Verdeja told her to give them to an unidentified co-
20 conspirator.

21    <u>Overt Act No. 161:</u>  On December 9, 2013, in a recorded telephone
22 conversation, UICC-36 reported to co-conspirator Jonathan Verdeja
23 that she had twenty money orders and co-conspirator Jonathan Verdeja
24 told UICC-36 to keep one for herself and give the rest to UICC-35.

25    <u>Overt Act No. 162:</u>  On December 9, 2013, in a recorded telephone
26 conversation, co-conspirator Jonathan Verdeja told UICC-35 to get
27 nineteen money orders from UICC-36 and to give them to co-conspirator
28 Gilbert Parra.

Conspiracy to Assault G.S.

Overt Act No. 163:  On October 20, 2013, in a recorded telephone conversation, co-conspirator Laureen Garcia ordered that G.S. be assaulted for mentioning defendant JOSE LANDA-RODRIGUEZ' name too much.

Possession of Heroin and Mexican Mafia LACJ Enterprise Correspondence within LACJ

Overt Act No. 164:  On November 5, 2013, an UICC-2 gave six doses of heroin that was prepackaged for sale to unindicted co-conspirator 37 ("UICC-37") to sell to other persons inside LACJ.

Overt Act No. 165:  On November 5, 2013, UICC-37 possessed six doses of heroin that was prepackaged for sale with intent to sell it to other persons inside LACJ.

Overt Act No. 166:  On November 5, 2013, UICC-37 transported a kite written by defendant MARK LANDEROS, containing instructions that co-conspirator Luis Garcia was the facilitator for defendant JOSE LANDA-RODRIGUEZ for MCJ and Twin Towers, his orders were to be respected, and anyone expressing disobedience to him should be assaulted for 39 seconds.

Possession of Mexican Mafia LACJ Enterprise Correspondence Related to Drug Trafficking and Extortion

Overt Act No. 167:  On December 4, 2013, co-conspirator Luis Garcia possessed kites directing the activities of the Mexican Mafia LACJ Enterprise inside LACJ, including drug trafficking and Extortion.

//

//

//

Assault of UICC-32 for Losing Mexican Mafia LACJ Enterprise Heroin

Overt Act No. 168:  On or before October 1, 2013, co-conspirator Miguel Garcia ordered that UICC-32 be assaulted as discipline for losing heroin that belonged to the Mexican Mafia LACJ Enterprise.

Overt Act No. 169:  On October 1, 2013, in a recorded telephone conversation, co-conspirator Laureen Garcia passed on to co-conspirator Manuel Jimenez co-conspirator Miguel Garcia's order that UICC-32 be assaulted inside LACJ as discipline for losing the heroin he had attempted to smuggle into NCCF.

Overt Act No. 170:  On or after October 1, 2013, co-conspirator Manuel Jimenez passed along the order to assault UICC-32.

Overt Act No. 171:  On December 5, 2013, unindicted co-conspirators assaulted UICC-32.

Assault of O.A. for Failing to Conduct Mexican Mafia LACJ Enterprise Operations, Including Drug Trafficking and Extortion, Properly

Overt Act No. 172:  On or before December 12, 2013, co-conspirator Luis Garcia ordered that O.A. be assaulted and replaced as a shot-caller.

Overt Act No. 173:  On December 12, 2013, unindicted co-conspirators assaulted O.A. to remove him as a shot-caller.

Possession of Heroin Within LACJ and Extortion

Overt Act No. 174:  On or before December 18, 2013, UICC-2 arranged for approximately 43.7 grams of heroin to be given to unindicted co-conspirator Jonathan Rodriguez to smuggle into Twin Towers for UICC-2 and co-conspirator Luis Garcia.

Overt Act No. 175:  On December 18, 2013, unindicted co-conspirator Jonathan Rodriguez possessed approximately 43.7 grams of

heroin with intent to distribute it to others on behalf of defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 176:  On or before January 30, 2014, UICC-2 wrote a kite to defendant MARK LANDEROS to explain that unindicted co-conspirator Jonathan Rodriguez had been fined $5,000 and would have to smuggle more drugs into LACJ because he lost the heroin seized from him on December 18, 2013, and that another Sureno had lost thirds in the form of two grams of methamphetamine.

Possession of Mexican Mafia LACJ Enterprise Material

Overt Act No. 177:  On January 31, 2014, co-conspirator Luis Garcia possessed a razor blade, two pens, and contact information for defendants JOSE LANDA-RODRIGUEZ and SAMANTHA RIVERA and others.

Defendant GABRIEL ZENDEJAS-CHAVEZ Hosts an Eme Meeting at his Law Office

Overt Act No. 178:  On February 4, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ met with defendant RAFAEL LEMUS, co-conspirator Miguel Rodriguez, DMM-2, and others in defendant GABRIEL ZENDEJAS-CHAVEZ's law office to discuss Eme business, including the passing of messages to Eme members in California State Prison by defendant GABRIEL ZENDEJAS-CHAVEZ, the passing of messages to defendant JOSE LANDA-RODRIGUEZ, obtaining drugs for DMM-2 to have sold, and problems La Eme was having with A.E., an Eme member in bad standing, and his brother G.E.

Possession of Mexican Mafia LACJ Correspondence

Overt Act No. 179:  On February 17, 2014, co-conspirator Luis Garcia possessed kites that discussed Mexican Mafia sanctioned assaults, the identity of Mexican Mafia LACJ Enterprise leaders within LACJ, and reflected that co-conspirator Luis Garcia was the

highest ranking shot-caller in LACJ for defendant JOSE LANDA-RODRIGUEZ.

Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to Meet With and Pass Messages to Mexican Mafia Members in Pelican Bay State Prison

   Overt Act No. 180:  On February 18, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to visit and pass messages to Mexican Mafia member 1, Mexican Mafia member 2, Mexican Mafia member 3, Mexican Mafia member 4, and Mexican Mafia member 5.

   Overt Act No. 181:  On February 18, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ attempted to smuggle a written message to a Mexican Mafia member at the Security Housing Unit at Pelican Bay State Prison.

   Overt Act No. 182:  On February 19, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to visit and pass messages to Mexican Mafia member 6, Mexican Mafia member 7, Mexican Mafia member 8, Mexican Mafia member 9, and Mexican Mafia member 10.

Defendant GABRIEL ZENDEJAS-CHAVEZ and UICC-38 Discuss Collecting and Laundering Mexican Mafia LACJ Enterprise Proceeds

   Overt Act No. 183:  On March 27, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to bring kitty proceeds to his law office.

   Overt Act No. 184:  On April 9, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to send him $1,000.

   Overt Act No. 185:  On April 9, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, agreed to deliver $300 to each of

two Mexican Mafia members at the ADX Florence federal prison in Colorado.

Overt Act No. 186:  On April 10, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ exchanged text messages with UICC-38 in which he agreed to deliver $400 to two persons in Colorado and to keep $200 for himself.

Overt Act No. 187:  On April 12, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ travelled to the ADX Florence federal prison in Colorado to visit Mexican Mafia member 11.

Overt Act No. 188:  On April 14, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, provided co-conspirator Donato Gonzales's name and booking number to UICC-38 so she could forward Mexican Mafia LACJ Enterprise proceeds to co-conspirator Donato Gonzales.

Overt Act No. 189:  On April 18, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ told UICC-38 that he had money to return to her because one of the Mexican Mafia members in Colorado could not have visitors.

Defendant GABRIEL ZENDEJAS-CHAVEZ Facilitates the Extortion of the Mongols Outlaw Motorcycle Gang and the Intimidation of a Victim of a Jail Stabbing

Overt Act No. 190:  On April 8, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to meet co-conspirator Luis Garcia and discuss Mexican Mafia business including the Mexican Mafia's extortion of the Mongols outlaw motorcycle gang and that they would be extorting the Mongols outlaw motorcycle gang for $100,000.

Overt Act No. 191:  On April 8, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ agreed to travel to Pelican Bay State Prison on June

25, 2014, to get support for the extortion proposal from other Mexican Mafia members.

Overt Act No. 192:  On April 8, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ agreed to contact unindicted co-conspirator 39 ("UICC-39") to tell co-conspirator Luis Garcia's stabbing victim, M.A., not to cooperate with law enforcement in exchange for being taken off the "Green Light" list.

Overt Act No. 193:  On April 8, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ explained to co-conspirator Luis Garcia how to use the legal system to delay his trial in order to remain in LACJ as a facilitator.

Overt Act No. 194:  On April 9, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, via text-message, directed UICC-38 to send him $1,000 and UICC-39's phone number per the instructions of defendant LUIS GARCIA.

Overt Act No. 195:  On April 23, 2014, via text-message, UICC-38 sent defendant GABRIEL ZENDEJAS-CHAVEZ a phone number for the national president of the Mongols outlaw motorcycle gang.

Overt Act No. 196:  On June 25, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to meet with and pass messages to Mexican Mafia member 1, Mexican Mafia member 4, Mexican Mafia member 6, Mexican Mafia member 8, and Mexican Mafia member 10 at Pelican Bay State Prison.

Possession of Mexican Mafia LACJ Enterprise Correspondence Discussing Drug Trafficking and Extortion

Overt Act No. 197:  On April 14, 2014, co-conspirator Luis Garcia possessed in his cell in LACJ two razor blades, a syringe, and more than 100 kites discussing Mexican Mafia LACJ Enterprise

business, including: (1) co-conspirator Luis Garcia's status as the highest ranking shot-caller in LACJ; (2) the smuggling of drugs into LACJ; (3) the thirds tax; (4) Green Dot numbers reflecting Mexican Mafia LACJ Enterprise proceeds; and (5) a request from defendant ALVINO MUNOZ that he be allowed to play a larger role in the smuggling of drugs into LACJ on behalf of the Mexican Mafia LACJ Enterprise.

Defendant MARK LANDEROS Collects Thirds Taxes

Overt Act No. 198:  On February 13, 2014, defendant MARK LANDEROS taxed R.H. the amount of approximately one-third of R.H.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 199:  On February 14, 2014, defendant MARK LANDEROS taxed J.B. the amount of approximately one-third of J.B.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 200:  On February 14, 2014, defendant MARK LANDEROS taxed U.R. the amount of approximately one-third of U.R.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 201:  On February 18, 2014, defendant MARK LANDEROS taxed M.V. the amount of approximately one-third of M.V.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 202:  On March 1, 2014, defendant MARK LANDEROS taxed L.M. the amount of approximately one-third of L.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 203:  On March 2, 2014, defendant MARK LANDEROS taxed P.C.-2 the amount of approximately one-third of P.C.-2's drugs for the right to sell the remainder in LACJ.

//

//

<u>Overt Act No. 204:</u>  On March 9, 2014, defendant MARK LANDEROS taxed G.P. the amount of approximately one-third of G.P.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 205:</u>  On March 9, 2014, defendant MARK LANDEROS accepted drugs that were confiscated by an unidentified unindicted co-conspirator from a Sureno who did not pay the thirds tax.

<u>Overt Act No. 206:</u>  On March 10, 2014, defendant MARK LANDEROS taxed G.M. the amount of approximately one-third of G.M.' drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 207:</u>  On March 11, 2014, defendant MARK LANDEROS taxed J.G. the amount of approximately one-third of J.G.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 208:</u>  On March 11, 2014, defendant MARK LANDEROS taxed N.G. the amount of approximately one-third of N.G.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 209:</u>  On March 13, 2014, defendant MARK LANDEROS taxed J.S.-2 the amount of approximately one-third of J.S.-2's drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 210:</u>  On March 15, 2014, defendant MARK LANDEROS taxed R.V. the amount of approximately one-third of R.V.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 211:</u>  On March 16, 2014, defendant MARK LANDEROS taxed D.A. the amount of approximately one-third of D.A.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 212:</u>  On March 17, 2014, defendant MARK LANDEROS taxed R.R. the amount of approximately one-third of R.R.'s drugs for the right to sell the remainder in LACJ.

1       <u>Overt Act No. 213:</u>  On March 19, 2014, defendant MARK LANDEROS

2  taxed H.G. the amount of approximately one-third of H.G.'s drugs for

3  the right to sell the remainder in LACJ.

4       <u>Overt Act No. 214:</u>  On March 19, 2014, defendant MARK LANDEROS

5  taxed D.A. the amount of approximately one-third of D.A.'s drugs for

6  the right to sell the remainder in LACJ.

7       <u>Overt Act No. 215:</u>  On March 23, 2014, defendant MARK LANDEROS

8  taxed M.M. the amount of approximately one-third of M.M.'s drugs for

9  the right to sell the remainder in LACJ.

10       <u>Overt Act No. 216:</u>  On March 25, 2014, defendant MARK LANDEROS

11  taxed J.E. the amount of approximately one-third of J.E.'s drugs for

12  the right to sell the remainder in LACJ.

13       <u>Overt Act No. 217:</u>  On March 25, 2014, defendant MARK LANDEROS

14  taxed J.A. the amount of approximately one-third of J.A.'s drugs for

15  the right to sell the remainder in LACJ.

16       <u>Overt Act No. 218:</u>  On April 4, 2014, defendant MARK LANDEROS

17  taxed J.M.-4 the amount of approximately one-third of J.M.-4's drugs

18  for the right to sell the remainder in LACJ.

19       <u>Overt Act No. 219:</u>  On April 8, 2014, defendant MARK LANDEROS

20  taxed J.S.-2 the amount of approximately one-third of J.S.-2's drugs

21  for the right to sell the remainder in LACJ.

22       <u>Overt Act No. 220:</u>  On April 8, 2014, defendant MARK LANDEROS

23  taxed J.H. the amount of approximately one-third of J.H.'s drugs for

24  the right to sell the remainder in LACJ.

25       <u>Overt Act No. 221:</u>  On April 13, 2014, defendant MARK LANDEROS

26  taxed R.O. the amount of approximately one-third of R.O.'s drugs for

27  the right to sell the remainder in LACJ.

28

Overt Act No. 222:  On April 14, 2014, defendant MARK LANDEROS taxed L.O. the amount of approximately one-third of L.O.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 223:  On April 15, 2014, defendant MARK LANDEROS taxed J.P. the amount of approximately one-third of J.P.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 224:  On April 16, 2014, defendant MARK LANDEROS taxed F.M. the amount of approximately one-third of F.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 225:  On April 16, 2014, defendant MARK LANDEROS taxed M.G. the amount of approximately one-third of M.G.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 226:  On April 17, 2014, defendant MARK LANDEROS taxed S.M. the amount of approximately one-third of S.M.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 227:  On April 18, 2014, defendant MARK LANDEROS taxed R.E. the amount of approximately one-third of R.E.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 228:  On April 22, 2014, defendant MARK LANDEROS taxed R.A. the amount of approximately one-third of R.A.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 229:  On April 24, 2014, defendant MARK LANDEROS taxed R.C. the amount of approximately one-third of R.C.'s drugs for the right to sell the remainder in LACJ.

Overt Act No. 230:  On April 24, 2014, defendant MARK LANDEROS taxed co-conspirator Miguel Garcia the amount of approximately one-third of co-conspirator Miguel Garcia's drugs for the right to sell the remainder in LACJ.

66

<u>Overt Act No. 231:</u>  On April 26, 2014, defendant MARK LANDEROS taxed P.M. the amount of approximately one-third of P.M.'s drugs for the right to sell the remainder in LACJ.

<u>Overt Act No. 232:</u>  On April 28, 2014, defendant MARK LANDEROS possessed a ledger detailing his collection of the thirds tax.

<u>Attempted Murder of J.B.-2 and Kidnapping and Assault and Attempted Murder of C.R.</u>

<u>Overt Act No. 233:</u>  On December 16, 2013, an unidentified co-conspirator repeatedly stabbed J.B.-2 in the head on defendant JOSE LANDA-RODRIGUEZ's orders, in retaliation for co-conspirator Alvaro Ruiz defying defendant JOSE LANDA-RODRIGUEZ.

<u>Overt Act No. 234:</u>  On or before April 21, 2014, defendant JOSE LANDA-RODRIGUEZ sanctioned a kidnapping of C.R. in retaliation for co-conspirator Alvaro Ruiz defying defendant JOSE LANDA-RODRIGUEZ.

<u>Overt Act No. 235:</u>  On April 21, 2014, defendant DAVID DIAZ sent a coded text message to co-conspirator Diana Martinez stating that C.R. needed to be assaulted on Mexican Mafia LACJ Enterprise orders.

<u>Overt Act No. 236:</u>  On April 22, 2014, defendant DAVID DIAZ and co-conspirator Diana Martinez picked up C.R. from C.R.'s residence in the City of Pomona and drove C.R. to co-conspirator David Villalobos's residence in San Bernardino County so that co-conspirator David Villalobos could detain and assault C.R.

<u>Overt Act No. 237:</u>  On April 22, 2014, co-conspirator David Villalobos obtained duct tape and attempted to restrain C.R. in the garage of his residence in San Bernardino County so that he could kill C.R.

<u>Overt Act No. 238:</u>  On April 22, 2014, co-conspirator David Villalobos assaulted C.R. with the intent to kill C.R.

Smuggling of Heroin and Methamphetamine into LACJ

Overt Act No. 239: From April 18, 2014, through April 20, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ, co-conspirators Donato Gonzales and Alvaro Ruiz, and unindicted co-conspirator Frank Herrera, arranged for heroin and methamphetamine to be smuggled into MCJ.

Overt Act No. 240: On April 22, 2014, unindicted co-conspirator Martin Salazar possessed and hid approximately 2.37 grams of heroin and 7.75 grams of methamphetamine that had been smuggled into LACJ by unindicted co-conspirator Ramon Amaya on behalf of the Mexican Mafia LACJ Enterprise.

Overt Act No. 241: Between April 25, 2014, and May 9, 2014, co-conspirator Donato Gonzales wrote a kite to co-conspirator Luis Garcia that the "legal team" had sent drugs to co-conspirator Donato Gonzales and asked co-conspirator Luis Garcia to look out for those drugs.

Overt Act No. 242: On June 2, 2014, co-conspirator Donato Gonzales wrote a coded letter, disguised as legal mail, to defendant GABRIEL ZENDEJAS-CHAVEZ stating that he had not received the heroin and methamphetamine.

Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to Pass Mexican Mafia Orders Regarding Assaults, Murder, and Drug Trafficking

Overt Act No. 243: On April 22, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to meet with co-conspirator Luis Garcia and pass an order that "Dreamer" from the 18th Street gang, "Demon" from 18th Street gang, and "Blanco" from the VNE gang be assaulted or killed, pass messages from Mexican Mafia members at the ADX Florence federal prison, discuss other Mexican

Mafia business including obtaining drugs from Mexican drug cartels, and report that he would be travelling to Mexico to work on an alliance with a drug cartel.

Overt Act No. 244:  Between May 5, 2014, and May 11, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ travelled to Mexico.

Defendant GABRIEL ZENDEJAS-CHAVEZ Used his Status to Pass Mexican Mafia Messages to JOSE LANDA-RODRIGUEZ

Overt Act No. 245:  On April 22, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to meet with defendant JOSE LANDA-RODRIGUEZ and pass a message from Mexican Mafia member 11 that Federal Mexican Mafia members would not be recognizing three State Mexican Mafia members as brothers.

Overt Act No. 246:  On April 22, 2014, during his meeting with defendant JOSE LANDA-RODRIGUEZ, defendant GABRIEL ZENDEJAS-CHAVEZ passed a message from DMM-2 about removing A.E. from Mexican Mafia membership.

Overt Act No. 247:  Between April 22, 2014, and April 25, 2014, defendant JOSE LANDA-RODRIGUEZ passed a message to co-conspirator Donato Gonzales to confirm that A.E. was being removed from Mexican Mafia membership.

Overt Act No. 248:  From April 25, 2014, through May 9, 2014, defendant JOSE LANDA-RODRIGUEZ directed co-conspirator Luis Garcia to have defendant GABRIEL ZENDEJAS-CHAVEZ use his status as an attorney to obtain documentation that a Mexican Mafia associate was cooperating with law enforcement to justify the murder of that Mexican Mafia associate.

//

//

Possession of Methamphetamine

Overt Act No. 249:  On April 30, 2014, co-conspirator Diana
Martinez drove co-conspirator Gerardo Tapia to pick up approximately
four pounds, or 1,746 grams, of methamphetamine for further
distribution.

Overt Act No. 250:  On April 30, 2014, co-conspirator Gerardo
Tapia possessed approximately four pounds, or 1,746 grams, of
methamphetamine for further distribution.

Defendant GABRIEL ZENDEJAS-CHAVEZ Uses His Status as an Attorney to
Discuss Mexican Mafia Business

Overt Act No. 251:  On April 28, 2014, and May 5, 2014,
defendant GABRIEL ZENDEJAS-CHAVEZ used his status as an attorney to
meet separately with defendant JOSE LANDA-RODRIGUEZ and co-
conspirators Luis Garcia and Donato Gonzales, and at LACJ.

Overt Act No. 252:  On April 28, 2014, and May 5, 2014, in
meetings at LACJ, defendant GABRIEL ZENDEJAS-CHAVEZ informed co-
conspirator Luis Garcia: that Federal Mexican Mafia members at the
ADX Florence federal prison had not voted for Mexican Mafia
membership for "Psycho"; that Mexican Mafia member 11 had placed
"Wolf" in charge of the 18th Street gang; that Mexican Mafia member 9
had advised that Deceased Mexican Mafia members 3 and 4 were feuding,
and to not get dragged into the feud; and to hold off on the assaults
of "Dreamer" from the 18th Street gang, "Demon" from 18th Street
gang, and "Blanco" from the VNE gang, that they had previously
discussed.

//

//

//

Possession of Methamphetamine, Including Methamphetamine to be
Smuggled into LACJ

Overt Act No. 253:  On May 9, 2014, co-conspirator Gerardo Tapia
possessed approximately 558.6 grams of methamphetamine in his
residence with the intent to distribute the methamphetamine,
including to smuggle some of it into LACJ.

Overt Act No. 254:  On May 9, 2014, DMM-2 possessed, in co-
conspirator Gerardo Tapia's residence, a letter concerning Mexican
Mafia business written by DMM-2 and Green Dot numbers related to
Mexican Mafia LACJ Enterprise activities.

JOSE LANDA-RODRIGUEZ Orders the Assault of MARK LANDEROS and the
Distribution of Mexican Mafia Proceeds

Overt Act No. 255:  Between April 25, 2014, and May 9, 2014,
defendant JOSE LANDA-RODRIGUEZ ordered co-conspirator Luis Garcia to
assault and fine defendant MARK LANDEROS for violating Mexican Mafia
rules, to remove him as the shot-caller, and to place another person
as a shot-caller.

Overt Act No. 256:  Between April 25, 2014, and May 9, 2014,
defendant JOSE LANDA-RODRIGUEZ directed the payment of thousands of
dollars of Mexican Mafia proceeds to other members.

Defendant GABRIEL ZENDEJAS-CHAVEZ Informs Others that Luis Garcia had
Dropped Out of the Mexican Mafia

Overt Act No. 257:  On May 28, 2014, in a recorded telephone
call, defendants GABRIEL ZENDEJAS-CHAVEZ and JOSE LANDA-RODRIGUEZ
discussed the fact that co-conspirator Luis Garcia had "dropped-out"
of the Mexican Mafia and should not be included in Mexican Mafia
business any longer.

1    <u>Overt Act No. 258:</u>  From May 28, 2014, through at least May 30,

2  2014, defendant GABRIEL ZENDEJAS-CHAVEZ informed other co-

3  conspirators that co-conspirator Luis Garcia had "dropped-out" of the

4  Mexican Mafia.

5    <u>Overt Act No. 259:</u>  Between May 18, 2014, and July 16, 2014,

6  defendant GABRIEL ZENDEJAS-CHAVEZ wrote, in correspondence disguised

7  as legal mail, to Mexican Mafia member 12 at Pelican Bay State Prison

8  that co-conspirator Luis Garcia had "dropped-out" of the Mexican

9  Mafia.

10  <u>HECTOR DUARTE and NANCY DUARTE Carry out Mexican Mafia LACJ</u>

11  <u>Enterprise Business at NCCF on behalf of DMM-2</u>

12    <u>Overt Act No. 260:</u>  From at least July 6, 2014, through November

13  10, 2014, DMM-2 directed defendant HECTOR DUARTE to run NCCF on

14  behalf of the Mexican Mafia LACJ Enterprise; defendant HECTOR DUARTE

15  collected kitty money, assigned fines as discipline, ordered assaults

16  to maintain discipline, and passed messages to defendant NANCY DUARTE

17  to be passed to DMM-2's secretary, co-conspirator Miguel Rodriguez.

18    <u>Overt Act No. 261:</u>  From at least July 6, 2014, through October

19  23, 2014, defendant NANCY DUARTE assisted defendant HECTOR DUARTE in

20  running the Mexican Mafia LACJ Enterprise's activities in NCCF on

21  behalf of DMM-2, including by passing messages between defendant

22  HECTOR DUARTE and co-conspirator Miguel Rodriguez, who was DMM-2's

23  secretary.

24    <u>Overt Act No. 262:</u>  On July 6, 2014, in a recorded telephone

25  conversation, defendant HECTOR DUARTE told defendant NANCY DUARTE

26  that, based on information from co-conspirator Chris Ferreira, an

27  unknown Hispanic gang member was to be assaulted and extorted for

28  $1,000 for dealing with African-American inmates.

Overt Act No. 263:  On July 25, 2014, in a recorded telephone conversation, co-conspirator Chris Ferreira relayed Green-Dot card numbers to defendant NANCY DUARTE representing $425 in Mexican Mafia LACJ Enterprise extortion money.

Overt Act No. 264:  On August 4, 2014, defendant NANCY DUARTE directed an unknown floor shot-caller within NCCF to send "everything," that is, the drug and extortion money, to defendant HECTOR DUARTE because defendant HECTOR DUARTE was in charge of NCCF for DMM-2.

Overt Act No. 265:  On August 6, 2014, defendant HECTOR DUARTE gave defendant NANCY DUARTE a Green Dot number representing kitty proceeds.

Overt Act No. 266:  On August 15, 2014, in a recorded telephone conversation, defendants HECTOR DUARTE and NANCY DUARTE, and co-conspirator Miguel Rodriguez, discussed Mexican Mafia LACJ Enterprise matters including defendant NANCY DUARTE giving co-conspirator Miguel Rodriguez Green Dot numbers representing proceeds from Mexican Mafia LACJ Enterprise activities, and discipline to be imposed on an unknown Hispanic gang member because the unknown Hispanic gang member had "dropped-out" and gone into protective custody.

Overt Act No. 267:  On August 15, 2014, in a recorded telephone conversation, defendant HECTOR DUARTE asked co-conspirator Miguel Rodriguez how much discipline to impose on an unknown Hispanic gang member, and co-conspirator Miguel Rodriguez conferred with DMM-2 then told defendant HECTOR DUARTE how to administer discipline and to decide on an amount for a fine.

Overt Act No. 268:  On August 15, 2014, in a recorded telephone conversation, defendant HECTOR DUARTE stated that he would impose a

$10,000 fine and order that an unknown Hispanic gang member be beaten three times for 39 seconds.

Overt Act No. 269:  On August 15, 2014, in a recorded telephone conversation, co-conspirator Miguel Rodriguez directed defendant HECTOR DUARTE to control the Mexican Mafia LACJ Enterprise's activities in the south and north facilities of NCCF.

Overt Act No. 270:  On August 15, 2014, in a recorded telephone conversation, defendant NANCY DUARTE relayed messages between defendant HECTOR DUARTE and co-conspirators Miguel Rodriguez and DMM-2 about discipline of an unknown Hispanic gang member and other Mexican Mafia LACJ Enterprise business.

Overt Act No. 271:  On August 20, 2014, in a recorded telephone conversation, defendants HECTOR DUARTE and NANCY DUARTE, and co-conspirator Miguel Rodriguez, discussed Mexican Mafia LACJ Enterprise matters; defendant HECTOR DUARTE gave defendant NANCY DUARTE Green Dot numbers representing kitty proceeds; co-conspirator Miguel Rodriguez told defendant HECTOR DUARTE that DMM-2 was upset about not receiving $10,000 in fine money and that the north facility of NCCF was a month behind in making their payments; and co-conspirator Miguel Rodriguez informed defendant HECTOR DUARTE that DMM-2 wanted the shot-caller for the north facility to be changed.

Overt Act No. 272:  On August 31, 2014, in a recorded telephone call, defendant HECTOR DUARTE relayed Green Dot card numbers to defendant NANCY DUARTE representing $385 in Mexican Mafia LACJ Enterprise extortion money.

Overt Act No. 273:  On August 31, 2014, in a recorded telephone call, defendant HECTOR DUARTE directed defendant NANCY DUARTE that a

Sureno was to be assaulted for losing Mexican Mafia LACJ Enterprise extortion money.

Overt Act No. 274:  On October 23, 2014, defendant NANCY DUARTE possessed ledgers containing her records of Mexican Mafia LACJ Enterprise kitty, drug, and fine debts and payments.

Directions to Send Mexican Mafia LACJ Enterprise Business and Proceeds Through Defendant GABRIEL ZENDEJAS-CHAVEZ

Overt Act No. 275:  On August 30, 2014, unindicted co-conspirator 43 ("UICC-43") possessed a kite written by another unknown co-conspirator directing that Mexican Mafia LACJ Enterprise proceeds from drug sales in LACJ and kitty money from LACJ should be sent to defendant GABRIEL ZENDEJAS-CHAVEZ and directing that co-conspirator Ernesto Vargas be recognized as having the authority to run NCCF.

Assault and Extortion of M.C. for Interfering with Mexican Mafia LACJ Enterprise Extortion

Overt Act No. 276:  From August 20, 2014, and September 26, 2014, defendants DAVID BERNARDINO, HECTOR DUARTE, and NANCY DUARTE, and co-conspirator Gail Ponce, processed the proceeds of the Mexican Mafia LACJ Enterprises extortion and drug trafficking activities using Green Dot accounts.

Overt Act No. 277:  On September 1, 2014, in a recorded telephone call, defendant DAVID BERNARDINO reported to co-conspirator Gail Ponce that a Paisa was taxing inmates and asked co-conspirator Gail Ponce to get instructions from defendants HECTOR DUARTE and NANCY DUARTE as to how to deal with the Paisa.

Overt Act No. 278:  On September 1 or 2, 2014, co-conspirator Gail Ponce told defendant NANCY DUARTE that defendant DAVID

BERNARDINO wanted instructions on how to deal with the Paisa who was taxing inmates.

Overt Act No. 279:  On September 2, 2014, in a recorded telephone call, defendant NANCY DUARTE told defendant HECTOR DUARTE about the Paisa who was taxing inmates and asked if defendant HECTOR DUARTE wanted the Paisa to be assaulted.

Overt Act No. 280:  On September 2, 2014, in a recorded telephone call, defendant HECTOR DUARTE told defendant NANCY DUARTE that defendant DAVID BERNARDINO should investigate which Mexican Mafia member the Paisa claims to work for and to assault the Paisa for 39 seconds.

Overt Act No. 281:  On September 2 or 3, 2014, defendant NANCY DUARTE passed along to co-conspirator Gail Ponce defendant HECTOR DUARTE's message that defendant DAVID BERNARDINO should investigate which Mexican Mafia member the Paisa claims to work for and to assault the Paisa for 39 seconds.

Overt Act No. 282:  On September 3, 2014, in a recorded telephone call, co-conspirator Gail Ponce passed along to defendant DAVID BERNARDINO defendant HECTOR DUARTE's message that defendant DAVID BERNARDINO should investigate which Mexican Mafia member the Paisa claimed to work for and to assault the Paisa for 39 seconds.

Overt Act No. 283:  On September 3 or 4, 2014, defendant DAVID BERNARDINO ordered that the Paisa, now known to be M.C., be assaulted.

Overt Act No. 284:  On September 4, 2014, unindicted co-conspirators assaulted M.C. as discipline for disrespecting Mexican Mafia LACJ Enterprise's authority.

Overt Act No. 285:  On September 5, 2014, in a recorded telephone call, defendant DAVID BERNARDINO reported to co-conspirator Gail Ponce that the Paisa, Marco Calderon, had been assaulted, but that the assault was not completed because Marco Calderon screamed and deputies interceded before the assault "could really get going."

Assault of E.O to Collect an Extortion Debt

Overt Act No. 286:  On September 7, 2014, in a recorded telephone call, co-conspirator Miguel Rodriguez directed defendant HECTOR DUARTE to have E.O. assaulted for failing to pay the Mexican Mafia LACJ Enterprise's thirds tax and for lying about doing so under the authority of another Mexican Mafia member.

Overt Act No. 287:  On September 8, 2014, defendant HECTOR DUARTE ordered that E.O. be assaulted and his drugs were to be confiscated because E.O. had lied about another Mexican Mafia member "blessing" the drugs.

Overt Act No. 288:  On September 9, 2014, unindicted co-conspirators assaulted E.O. as discipline for violating Mexican Mafia LACJ Enterprise rules.

Overt Act No. 289:  On September 11, 2014, unindicted co-conspirators assaulted E.O. as discipline for violating Mexican Mafia LACJ Enterprise rules.

Conspiracy to Remove Mexican Mafia Member A.E. From Power and to Take Over His Territories

Overt Act No. 290:  On or before April 25, 2014, defendant JOSE LANDA-RODRIGUEZ wrote a kite to co-conspirator Donato Gonzales to inform him that defendant JOSE LANDA-RODRIGUEZ, DMM-2, and other Mexican Mafia members intended to strip Mexican Mafia membership from A.E.

<u>Overt Act No. 291:</u>  On or before April 25, 2014, defendant JOSE LANDA-RODRIGUEZ wrote a kite to co-conspirator Luis Garcia to inform him that defendant JOSE LANDA-RODRIGUEZ, DMM-2, and other Mexican Mafia members intended to strip Mexican Mafia membership from A.E.

<u>Overt Act No. 292:</u>  On or before April 25, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ passed a message from DMM-2 to defendant JOSE LANDA-RODRIGUEZ regarding the decision to strip Mexican Mafia membership from A.E.

<u>Overt Act No. 293:</u>  On June 30, 2014, in a recorded telephone conversation, defendant JOSE LANDA-RODRIGUEZ and unindicted co-conspirator 45 ("UICC-44") discussed threatening the life of D.C. because of his alignment with Mexican Mafia member A.E. and his collecting of taxes in areas controlled by defendant JOSE LANDA-RODRIGUEZ.

<u>Overt Act No. 294:</u>  In or around August 2014, defendants GABRIEL ZENDEJAS-CHAVEZ and RAFAEL LEMUS, and co-conspirators Ernesto Vargas and Miguel Rodriguez met at defendant GABRIEL ZENDEJAS-CHAVEZ's law office and discussed A.E. being removed from the Mexican Mafia and other members taking over his territories.

<u>Overt Act No. 295:</u>  On September 14, 2014, an unknown co-conspirator killed D.C. because of his alignment with A.E. and his collection of taxes in areas controlled by defendant JOSE LANDA-RODRIGUEZ.

<u>Overt Act No. 296:</u>  On October 22, 2014, co-conspirator Miguel Rodriguez passed a message to defendant JOSE LANDA-RODRIGUEZ from defendant RAFAEL LEMUS that Mexican Mafia members were in agreement about stripping A.E. of his membership and taking over his territories.

1    <u>Overt Act No. 297:</u>  On November 11, 2014, an unknown co-
2    conspirator killed G.E. because of his alignment with A.E.
3    <u>Defendant GABRIEL ZENDEJAS-CHAVEZ Used His Status as an Attorney to</u>
4    <u>Pass Messages About Mexican Mafia Business</u>
5    <u>Overt Act No. 298:</u>  On September 2, 2014, September 3, 2014, and
6    October 1, 2014, defendant GABRIEL ZENDEJAS-CHAVEZ used his status as
7    an attorney to visit ten Mexican Mafia members at Pelican Bay State
8    Prison, including Mexican Mafia member 4, and pass messages about new
9    Mexican Mafia members and about the identity of possible cooperators.
10    <u>Overt Act No. 299:</u>  Between October 1, 2014, and October 22,
11    2014, after visiting Pelican Bay State Prison, defendant GABRIEL
12    ZENDEJAS-CHAVEZ reported to defendant RAFAEL LEMUS and co-conspirator
13    Miguel Rodriguez that: defendant GABRIEL ZENDEJAS-CHAVEZ had found
14    paperwork that co-conspirator Luis Garcia, unindicted co-conspirator
15    45 ("UICC-45"), and UICC-38 were cooperating with law enforcement;
16    Mexican Mafia Member 4 confirmed that "Cartoon" from the Canta Ranas
17    gang was now a Mexican Mafia member; and A.E. had been stripped of
18    his territories.
19    <u>Overt Act No. 300:</u>  On or before October 22, 2014, co-
20    conspirator Miguel Rodriguez wrote a kite at the direction of DMM-2's
21    secretary, defendant RAFAEL LEMUS, stating that defendant GABRIEL
22    ZENDEJAS-CHAVEZ had found paperwork that co-conspirator Luis Garcia,
23    UICC-38, and UICC-45 were cooperating with law enforcement, that
24    "Cartoon" from the Canta Ranas gang was now an Eme member, that A.E.
25    had been stripped of his territories, and that the accompanying drugs
26    belonged to DMM-2 and Mexican Mafia member 13.
27    //
28    //

Smuggling of Heroin and Mexican Mafia LACJ Enterprise Correspondence
into LACJ

Overt Act No. 301:  On or before October 21, 2014, co-conspirator Miguel Rodriguez directed unindicted co-conspirator Marco Meza to smuggle drugs and a kite into LACJ on behalf of DMM-2.

Overt Act No. 302:  On October 22, 2014, at the direction of co-conspirator Miguel Rodriguez, unindicted co-conspirator Marco Meza smuggled approximately 18.82 grams of heroin into LACJ on behalf of the Mexican Mafia.

Overt Act No. 303:  On October 22, 2014, unindicted co-conspirator Marco Meza possessed a kite from co-conspirator Miguel Rodriguez to defendant JOSE LANDA-RODRIGUEZ discussing Mexican Mafia LACJ Enterprise business, including the identity of potential cooperators as determined by defendant GABRIEL ZENDEJAS-CHAVEZ, the identity of a new Mexican Mafia member, and the standing of other Mexican Mafia members.

Possession of Heroin to be Smuggled into LACJ

Overt Act No. 304:  On October 23, 2014, co-conspirator Miguel Rodriguez possessed approximately 25.78 grams of heroin at his residence with the intent to distribute it to other persons, including by smuggling into LACJ.

Possession of Methamphetamine, Heroin, and Cocaine, Including to be Smuggled into LACJ and Possession of a Firearm

Overt Act No. 305:  On October 24, 2014, co-conspirator Ernesto Vargas possessed approximately 601.2 grams of methamphetamine, approximately 501.3 grams of heroin, approximately 83.4 grams of cocaine, and approximately 1.4 grams of cocaine base in the form of crack cocaine with the intent to distribute to others, including by

smuggling into LACJ, for the benefit of the Mexican Mafia LACJ
Enterprise.

Overt Act No. 306:  On October 24, 2014, co-conspirator Ernesto
Vargas possessed a firearm, namely, a Kimber model Custom 2 .45
caliber pistol, and ammunition, in order to protect narcotics for the
benefit of the Mexican Mafia LACJ Enterprise.

Attorney GABRIEL ZENDEJAS-CHAVEZ Passes Mexican Mafia Messages

Overt Act No. 307:  On October 30, 2014, defendant GABRIEL
ZENDEJAS-CHAVEZ visited Mexican Mafia member 11 at the ADX Florence
federal prison in Colorado and showed secret messages to Mexican
Mafia member 11.

Assaults of R.B. and M.G.

Overt Act No. 308:  On August 22, 2015, in a recorded telephone
conversation, co-conspirator Genessis Blanco told unindicted co-
conspirator 48 ("UICC-48") to tell co-conspirator Andrew Pineda to
have R.B. assaulted because he was not recognizing the authority of
DMM-2 and was interfering with Mexican Mafia LACJ Enterprise
activities, including drug trafficking and extortion.

Overt Act No. 309:  On August 22, 2015, in a recorded telephone
conversation, co-conspirator Andrew Pineda told co-conspirator
Genessis Blanco that M.G. was causing problems by not respecting the
authority of DMM-2 and interfering with Mexican Mafia LACJ Enterprise
activities, including drug trafficking and extortion.

Overt Act No. 310:  On August 22, 2015, in a recorded telephone
conversation, co-conspirator Genessis Blanco told co-conspirator
Andrew Pineda to have M.G. assaulted because he was not recognizing
the authority of DMM-2 and was interfering with Mexican Mafia LACJ
Enterprise activities, including drug trafficking and extortion.

1    Overt Act No. 311:  On August 22, 2015, co-conspirator Andrew

2    Pineda ordered that R.B. and M.G. be assaulted for not recognizing

3    the authority of DMM-2 and interfering with Mexican Mafia LACJ

4    Enterprise activities, including drug trafficking and extortion.

5    Overt Act No. 312:  On August 23, 2015, unindicted co-

6    conspirators assaulted R.B. and M.G..

7    Overt Act No. 313:  On and before October 23, 2015, co-

8    conspirator Genessis Blanco possessed records of the Mexican Mafia

9    LACJ Enterprises activities, including records of extortion and drug

10   trafficking.

11   Murder of P.C.

12   Overt Act No. 314:  On April 5, 2015, in a recorded telephone

13   conversation, defendant ALVINO MUNOZ discussed a dispute over

14   neighborhood taxation and fines of Echo Park gang members with P.C.,

15   and P.C. told defendant ALVINO MUNOZ that he takes orders from

16   another Mexican Mafia member and would not talk to defendant ALVINO

17   MUNOZ about it, and would only talk to defendant JOSE LANDA-

18   RODRIGUEZ.

19   Overt Act No. 315:  On April 5, 2015, in a recorded telephone

20   conversation, defendant ALVINO MUNOZ discussed with unindicted co-

21   conspirator 50 ("UICC-50") the dispute with P.C.

22   Overt Act No. 316:  On April 27, 2015, defendant SAMANTHA RIVERA

23   initiated a three-way call from defendant JOSE LANDA-RODRIGUEZ to

24   Mexican Mafia member 14 and DMM-2, and in a recorded telephone

25   conversation, defendant JOSE LANDA-RODRIGUEZ discussed with Mexican

26   Mafia member 14 that defendant ALVINO MUNOZ had sent someone to

27   collect the fines of Echo Park gang members, but P.C. was interfering

28

with the collection of the fine and was disrespectful to defendant ALVINO MUNOZ.

Overt Act No. 317:  On April 27, 2015, in the three-way call initiated by defendant SAMANTHA RIVERA, defendant JOSE LANDA-RODRIGUEZ discussed with DMM-2 that P.C. was interfering in his business and tried to push a "hard line" with defendant ALVINO MUNOZ.

Overt Act No. 318:  On July 19, 2015, in a recorded telephone conversation, defendant ALVINO MUNOZ and UICC-50 discussed that P.C. had blocked the payment of a fine, UICC-50 stated that P.C. worked for another Mexican Mafia member, and defendant ALVINO MUNOZ told UICC-50 to shut down P.C.'s activities.

Overt Act No. 319:  On July 19, 2015, in a recorded telephone conversation, defendant JOSE LANDA-RODRIGUEZ told defendant SAMANTHA RIVERA that P.C. is interfering and that defendant SAMANTHA RIVERA and Mexican Mafia member 4 should talk to him.

Overt Act No. 320:  On July 19, 2015, in coded language during a recorded telephone conversations, UICC-9, on defendant JOSE LANDA-RODRIGUEZ's orders, told unindicted co-conspirator 51 ("UICC-51") the following: that P.C. was defying defendant JOSE LANDA-RODRIGUEZ; that defendant JOSE LANDA-RODRIGUEZ was angry; to meet with P.C. and "teach him a little lesson"; to tell P.C. to stay on his side of "the bridge"; that P.C. was on the "Green Light" list; that defendant JOSE LANDA-RODRIGUEZ wants P.C. "cut loose"; that defendant JOSE LANDA-RODRIGUEZ' decision is "final"; that there will be punishment for disregarding what defendant JOSE LANDA-RODRIGUEZ said; that UICC-51 should contact DMM-2 to confirm the order; and that defendant JOSE LANDA-RODRIGUEZ was very angry, "pacing back and forth" and wanted to teach P.C. a lesson.

Overt Act No. 321:  On July 26, 2015, in a recorded telephone conversation, UICC-9 told UICC-51 that defendant JOSE LANDA-RODRIGUEZ put P.C. on the Green Light list and told UICC-51 to have an unidentified co-conspirator lure P.C. in.

Overt Act No. 322:  On November 21, 2015, unknown co-conspirators shot and killed P.C.

Defendant RAFAEL LEMUS Assists DMM-2 in Running Mexican Mafia LACJ Enterprise Business, Including Drug Trafficking and Extortion

Overt Act No. 323:  Beginning in or prior to February 2014, and continuing until at least May 2015, defendant RAFAEL LEMUS assisted DMM-2 in running Mexican Mafia LACJ Enterprise business.  Defendant RAFAEL LEMUS assisted in obtaining drugs from Mexico and passed messages from DMM-2 to others including to and from defendant GABRIEL ZENDEJAS-CHAVEZ.

Overt Act No. 324:  On February 11, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told an associate of A.E. that the areas formerly controlled by A.E. now belonged to defendant JOSE LANDA-RODRIGUEZ, DMM-2, and their associates.

Overt Act No. 325:  On May 8, 2015, defendant RAFAEL LEMUS possessed approximately $11,500 and Mexican Mafia-related correspondence at his residence.

Overt Act No. 326:  On November 20, 2015, in a recorded telephone conversation, defendant HECTOR DUARTE explained to UICC-5 the money he collected as a shot-caller in NCCF.

Overt Act No. 327:  On November 20, 2015, UICC-5 connected defendant RAFAEL LEMUS into a three-way call with defendant HECTOR DUARTE.

Overt Act No. 328:  On November 20, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told defendant HECTOR DUARTE that he would investigate HECTOR DUARTE's "numbers," that is, the amount of Mexican Mafia LACJ Enterprise drug trafficking and extortion proceeds he forwarded, and asked HECTOR DUARTE if anyone could verify his numbers.

Overt Act No. 329:  On November 20, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told defendant HECTOR DUARTE that UICC-5 is the "Senora" for DMM-2, that people should listen to UICC-5, and that failure to recognize UICC-5 will result in an assault.

Overt Act No. 330:  On November 22, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS told co-conspirator Andrew Pineda and UICC-5 that co-conspirator Miguel Rodriguez has no status with the Mexican Mafia LACJ Enterprise and that anyone using co-conspirator Miguel Rodriguez's name will be assaulted.

Overt Act No. 331:  On November 22, 2015, in a recorded telephone conversation, defendant RAFAEL LEMUS stated that he has the authority to appoint secretaries, that he appointed UICC-5, and that anyone who gives UICC-5 trouble will "hear from him" and have problems that follow them outside of LACJ.

Smuggling of Methamphetamine and Heroin into LACJ

Overt Act No. 332:  From August 19, 2015, through September 1, 2015, defendant ALVINO MUNOZ and co-conspirator Kelly Jo Bell, and unindicted co-conspirator Robert Ramirez, arranged to smuggle drugs into LACJ for the benefit of defendant JOSE LANDA-RODRIGUEZ.

//

//

1    Overt Act No. 333:  On August 19, 2015, in a recorded telephone

2    conversation, defendant ALVINO MUNOZ and co-conspirator Kelly Jo Bell

3    discussed smuggling drugs into LACJ.

4    Overt Act No. 334:  On August 28, 2015, in a recorded telephone

5    conversation, co-conspirator Kelly Jo Bell told defendant ALVINO

6    MUNOZ that she was on her way to deliver drugs to the individual who

7    would smuggle them into LACJ.

8    Overt Act No. 335:  On August 28, 2015, co-conspirator Kelly Jo

9    Bell delivered approximately 41.8 grams of methamphetamine to

10   unindicted co-conspirator Alejandro Martinez to smuggle into LACJ for

11   defendant JOSE LANDA-RODRIGUEZ.

12   Overt Act No. 336:  On September 1, 2015, in a recorded

13   telephone conversation, unindicted co-conspirator Robert Ramirez

14   discussed with another unindicted co-conspirator the fact that

15   unindicted co-conspirator Alejandro Martinez had the drugs to be

16   smuggled into LACJ for defendant JOSE LANDA-RODRIGUEZ.

17   Overt Act No. 337:  On August 30, 2015, unindicted co-

18   conspirator Alejandro Martinez possessed approximately 41.8 grams of

19   methamphetamine and 61.83 grams of heroin inside his body and got

20   himself arrested in order to bring the methamphetamine and heroin

21   into LACJ.

22   Overt Act No. 338:  On September 1, 2015, in a recorded

23   telephone conversation, co-conspirator Kelly Jo Bell learned that an

24   unindicted co-conspirator inside LACJ knew about unindicted co-

25   conspirator Alejandro Martinez smuggling drugs into LACJ, had located

26   unindicted co-conspirator Alejandro Martinez , and would keep co-

27   conspirator Kelly Jo Bell updated as to the status of the drugs.

28

1    Overt Act No. 339:  On October 14, 2015, co-conspirator Kelly Jo

2    Bell possessed approximately 12.0 grams of methamphetamine and

3    ledgers regarding Mexican Mafia LACJ Enterprise business.

4    Assault of C.G. for Interfering with Drug Trafficking and Extortion

5    Overt Act No. 340:  On January 16, 2016, in a recorded telephone

6    call, defendant MARK LANDEROS and UICC-6 discussed having C.G.

7    assaulted in retaliation for C.G. attempting to take control of LACJ

8    away from defendant JOSE LANDA-RODRIGUEZ.

9    Overt Act No. 341:  On January 16, 2016, in a recorded telephone

10   call, at defendant MARK LANDEROS' direction, UICC-6 called an

11   unindicted co-conspirator and relayed defendant MARK LANDEROS' order

12   that C.G. was to be assaulted.

13   Overt Act No. 342:  On January 16, 2016, in a recorded telephone

14   call, UICC-6 relayed an unindicted co-conspirator's message that C.G.

15   was working under the orders of other Mexican Mafia members.

16   Overt Act No. 343:  On January 16, 2016, UICC-6 relayed a

17   message to UICC-16 that C.G. was to be assaulted under the authority

18   of defendant JOSE LANDA-RODRIGUEZ for interfering with Mexican Mafia

19   LACJ Enterprise operations, including drug trafficking and extortion.

20   Overt Act No. 344:  On January 16, 2016, in a recorded telephone

21   call, UICC-16 relayed the order that C.G. was to be assaulted to

22   UICC-12, a shot-caller in LACJ.

23   Overt Act No. 345:  On January 26, 2016, on the orders from

24   defendant MARK LANDEROS and UICC-12, unindicted co-conspirators

25   assaulted C.G. at the direction of the Mexican Mafia LACJ Enterprise.

26   G.   SPECIAL SENTENCING ALLEGATIONS

27   11.  Beginning on a date unknown to the Grand Jury, and

28   continuing until at least March 29, 2018, in Los Angeles County,

within the Central District of California, and elsewhere, defendants
JOSE LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, ALVINO
MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, CECILIA VIRGEN,
NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO, MIRIAM MEZA, ANA
MARTINEZ, and ADRIAN ARAIZA, and others known and unknown to the
Grand Jury, conspired and agreed with each other to knowingly and
intentionally (i) distribute, and (ii) possess with intent to
distribute:

      a.  at least 500 grams of a mixture and substance
containing a detectable amount of methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States Code,
Sections 846, 841(a)(1) and (b)(1)(A)(viii);

      b.  at least 50 grams of methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States Code,
Sections 846, 841(a)(1) and (b)(1)(A)(viii);

      c.  at least a kilogram of a mixture and substance
containing a detectable amount of heroin, a Schedule I narcotic drug
controlled substance, in violation of Title 21, United States Code,
Sections 846, 841(a)(1) and (b)(1)(A)(i).

12.  On or about December 16, 2013, in Los Angeles County,
within the Central District of California, defendants JOSE LANDA-
RODRIGUEZ and others unknown to the Grand Jury conspired unlawfully
to kill J.B.-2 with malice aforethought, in violation of California
Penal Code Sections 182 and 187.

13.  From on or about April 5, 2015, through on or about
November 21, 2015, in Los Angeles County, within the Central District
of California, defendants JOSE LANDA-RODRIGUEZ and others unknown to
the Grand Jury conspired unlawfully to kill P.C. with malice

aforethought, in violation of California Penal Code Sections 182 and 187.

14.  On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, defendant DAVID DIAZ unlawfully conspired to kill C.R. with malice aforethought, in violation of California Penal Code Sections 182 and 187.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TWO

[18 U.S.C. §§ 1959(a)(3), 2]

[DEFENDANTS MARK LANDEROS AND JUAN LEONARD GARCIA]

1.   Paragraphs 1 through 13 of the General Allegations of this First Superseding Indictment and paragraphs 2 through 6 of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.   At all times relevant to this First Superseding Indictment, the Mexican Mafia LACJ Enterprise including its leaders, members, and associates, constituted an "enterprise," as defined by Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which is engaged in, and the activities of which affected, interstate and foreign commerce.  The Mexican Mafia LACJ Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.   At all times relevant to this First Superseding Indictment, the Mexican Mafia LACJ Enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), consisting of:

multiple acts involving:

a.   Murder, in violation of California Penal Code Sections 21a, 31, 182, 187, 189, and 664;

b.   Kidnapping, in violation of California Penal Code Sections 21a, 31, 182, 207, 209, and 664;

c.   Robbery, in violation of California Penal Code Sections 21a, 31, 182, 211, 212, 212.5, 213, 215, and 664;

1        d.   Extortion, in violation of California Penal Code

2   Sections 21a, 31, 182, 518, 519, 524, and 664;

3   multiple offenses involving:

4        e.   the distribution of, possession with intent to

5   distribute, and conspiracy to possess with intent to distribute and

6   distribute controlled substances, including methamphetamine, heroin,

7   cocaine, cocaine base, and marijuana, in violation of Title 21,

8   United States Code, Sections 841(a)(1) and 846;

9   and multiple acts indictable under the following provisions of

10  federal law:

11       f.   Title 18, United States Code, Section 1512, Tampering

12  with a Witness;

13       g.   Title 18, United States Code, Section 1513,

14  Retaliating against a witness;

15       h.   Title 18, United States Code, Sections 1956 and 1957,

16  Money Laundering;

17       i.   Title 18, United States Code, Section 1028, Identity

18  Fraud; and

19       j.   Title 18, United States Code, Section 1029, Access

20  Device Fraud.

21  4.   On or about March 31, 2013, in Los Angeles County, within

22  the Central District of California, for the purpose of maintaining

23  and increasing position in the Mexican Mafia LACJ Enterprise, an

24  enterprise engaged in racketeering activity, defendants MARK

25  LANDEROS, aka "Smokey," aka "Troy," aka "Hot," and JUAN LEONARD

26  GARCIA, aka "Little John," aka "Trevor," unlawfully and knowingly

27  assaulted A.R. with a dangerous weapon, which assault resulted in

28

1   serious bodily injury, in violation of California Penal Code Sections

2   31, 245(a)(1) and (4).

COUNT THREE

[18 U.S.C. §§ 1959(a)(1), 2(a)]

[DEFENDANT DAVID DIAZ]

1.    Paragraphs 1 through 13 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 6 of Count One, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.    On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendant DAVID DIAZ, aka "Stomps," unlawfully and knowingly kidnapped C.R., in violation of California Penal Code Sections 31, 207.

COUNT FOUR

[18 U.S.C. § 1959(a)(5)]

[DEFENDANT DAVID DIAZ]

1.   Paragraphs 1 through 13 of the General Allegations of this First Superseding Indictment, paragraphs 2 through 6 of Count One, and Paragraphs 2 and 3 of Count Two of this First Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.   On or about April 22, 2014, in Los Angeles and San Bernardino Counties, within the Central District of California, for the purpose of maintaining and increasing position in the Mexican Mafia LACJ Enterprise, an enterprise engaged in racketeering activity, defendant DAVID DIAZ, aka "Stomps," and others known and unknown to the Grand Jury, unlawfully and knowingly conspired to kidnap C.R., in violation of California Penal Code Sections 182 and 207.

COUNT FIVE

[21 U.S.C § 846]

[DEFENDANTS JOSE LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL
LEMUS, ALVINO MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS,
CECILIA VIRGEN, NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO,
MIRIAM MEZA, ANA MARTINEZ, ADRIAN ARAIZA, ROBERT RAMIREZ, BRYANNA
MCCULLAH, AND JUAN NMN GARCIA]

1.   Paragraphs 1 through 13 of the General Allegations of this
First Superseding Indictment, and paragraphs 2 through 6 of Count One
of this First Superseding Indictment, are re-alleged and incorporated
by reference as though fully set forth herein.

A.   OBJECTS OF THE CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury and
continuing until at least March 29, 2018, in Los Angeles and San
Bernardino Counties, within the Central District of California, and
elsewhere, defendants JOSE LANDA-RODRIGUEZ, aka "Jose Rodriguez-
Landa," aka "Jose Landa," aka "Jose Rodriguez," aka "Fox," aka "Fox
Tapia," aka "F-X," aka "Alejandro Tapia," aka "Cola Rojo," aka "Red
Tail," aka "Pops," aka "Tio," aka "The General," aka "Taras," aka
"The Old Man," aka "The Animal," aka "Old School," GABRIEL ZENDEJAS-
CHAVEZ, aka "Corbatas," RAFAEL LEMUS, aka "Ere," aka "The Voice," aka
"La Voz," ALVINO MUNOZ, aka "Bino," aka "B," HECTOR DUARTE, aka "Lil
Man," aka "Hecko," SAMANTHA RIVERA, aka "Sam," aka "S," MARK
LANDEROS, aka "Smokey," aka "Troy," aka "Hot," CECILIA VIRGEN, aka
"Cecilia DeLeon," aka "Sessy," aka "Hazel," aka "Gia," aka "Sky," aka
"Hooker," NANCY DUARTE, aka "Pink," VALENTIN CORDOVA, aka "Teen,"
DAVID BERNARDINO, aka "Downer," MIRIAM MEZA, ANA MARTINEZ, aka "Ana
America," aka "Bandit," ADRIAN ARAIZA, aka "Chemo," ROBERT RAMIREZ,

aka "Wiz," BRYANNA MCCULLAH, aka "Bee Bee," and JUAN NMN GARCIA, aka "Trouble," and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute, and possess with intent to distribute, the following controlled substances:

    a.    at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii);

    b.    at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii);

    c.    at least 100 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(i);

    d.    cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); and

    e.    marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(D).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

    3.    Paragraph 9 of Count One of this First Superseding Indictment is re-alleged and incorporated by reference as if fully set forth herein.

C.   UNDERLINE OVERT ACTS

      4.   On or about the following dates, in furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants JOSE LANDA-RODRIGUEZ, GABRIEL ZENDEJAS-CHAVEZ, RAFAEL LEMUS, ALVINO MUNOZ, HECTOR DUARTE, SAMANTHA RIVERA, MARK LANDEROS, CECILIA VIRGEN, NANCY DUARTE, VALENTIN CORDOVA, DAVID BERNARDINO, MIRIAM MEZA, ANA MARTINEZ, ADRIAN ARAIZA, ROBERT RAMIREZ, BRYANNA MCCULLAH, and JUAN NMN GARCIA, and others known and unknown to the Grand Jury, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, Overt Acts numbered 1 through 345 as set forth in Section F of Count One of this First Superseding Indictment, which are re-alleged and incorporated by reference as if fully set forth herein, in addition to the following:

Smuggling of Heroin and Methamphetamine into LACJ

      Overt Act No. 346:  From December 19, 2012, through January 22, 2013, defendant CECILIA VIRGEN and co-conspiratord Jose Flores, UICC-3, and UICC-23, arranged to smuggle approximately 64.6 grams of heroin and approximately 36.7 grams of methamphetamine into LACJ on behalf of DMM-1.

      Overt Act No. 347:  On January 19, 2013, at defendant CECILIA VIRGEN's direction, UICC-23 possessed and smuggled in his body at least 64.6 grams of heroin and 36.7 grams of methamphetamine into LACJ for DMM-1.

      Overt Act No. 348:  On January 22, 2013, UICC-23 gave an unknown amount of a controlled substance to UICC-3 in LACJ.

//

//

Smuggling of Methamphetamine, Heroin, and Marijuana into LACJ

Overt Act No. 349:  From January 22, 2013, through February 28, 2013, co-conspirator Richard Griego arranged with defendant CECILIA VIRGEN and co-conspirators Valerie Trejo and Richard Bailey, for heroin, methamphetamine, and marijuana to be smuggled to UICC-3 in LACJ on behalf of DMM-1.

Overt Act No. 350:  On February 28, 2013, co-conspirator Richard Griego possessed in his body and attempted to smuggle approximately 26.2 grams of pure methamphetamine, approximately 62.9 grams of heroin, and approximately 11.75 grams of marijuana into LACJ for UICC-3 and DMM-1.

Smuggling of Methamphetamine into LACJ

Overt Act No. 351:  From July 24, 2013, through August 14, 2013, co-conspirator Jonathan Rodriguez arranged with defendants MARK LANDEROS, BRYANNA MCCULLAH, and JUAN NMN GARCIA, and co-conspirator Kristen Ayala, and UICC-31, to smuggle approximately one ounce of methamphetamine and one ounce of marijuana into LACJ.

Overt Act No. 352:  On July 25, 2013, in a recorded telephone conversation, co-conspirator Kristen Ayala advised UICC-31 on what to do when he arrived at LACJ with the smuggled drugs.

Overt Act No. 353:  On August 3, 2013, in a recorded telephone conversation between defendants MARK LANDEROS and JUAN NMN GARCIA, and co-conspirator Kristen Ayala, defendant JUAN NMN GARCIA agreed to supply methamphetamine and marijuana for defendant MARK LANDEROS, and gave prices for the drugs.

Overt Act No. 354:  On August 3, 2014, defendant JUAN NMN GARCIA provided approximately one ounce of methamphetamine to co-conspirator

Kristen Ayala so that the methamphetamine could be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 355:  On August 3, 2014, co-conspirator Kristen Ayala obtained and packaged approximately one ounce of methamphetamine so that it could be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 356:  From August 4, 2013, through August 12, 2013, UICC-31 possessed approximately one ounce of methamphetamine for the purpose of smuggling it into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 357:  On August 13, 2013, defendant BRYANNA MCCULLAH possessed approximately one ounce of methamphetamine and gave that methamphetamine to co-conspirator Jonathan Rodriguez, with the intent that it be smuggled into LACJ on behalf of defendant MARK LANDEROS.

Overt Act No. 358:  On August 13, 2013, in a recorded telephone conversation, co-conspirator Jonathan Rodriguez agreed with defendant MARK LANDEROS to smuggle drugs into LACJ.

Overt Act No. 359:  On August 14, 2013, co-conspirator Jonathan Rodriguez possessed approximately 22.7 grams of methamphetamine in in his body which was discovered and seized by LASD deputies.

Smuggling of Methamphetamine and Marijuana into LACJ via Kidney Dialysis Center

Overt Act No. 360:  On September 21, 2013, co-conspirator Jonathan Mendez attempted to smuggle approximately 51.29 grams of marijuana and 13.2 grams of methamphetamine that had been left in a kidney dialysis center by an unknown co-conspirator.

Possession of Heroin Within LACJ and Extortion

Overt Act No. 361:  On or before December 18, 2013, co-conspirator Jonathan Rodriguez agreed to smuggle approximately 43.7 grams of heroin inside Twin Towers for UICC-2 and defendant LUIS GARCIA.

Overt Act No. 362:  On December 18, 2013, in Twin Towers, co-conspirator Jonathan Rodriguez, intending to distribute the drugs to others on behalf of defendant JOSE LANDA-RODRIGUEZ, possessed approximately 43.7 grams of heroin which was discovered and seized by LASD deputies.

Smuggling of Drugs in LACJ

Overt Act No. 363:  Between April 18, 2014, and April 20, 2014, co-conspirator Frank Herrera, on behalf of co-conspirators Donato Gonzalez and Alvaro Ruiz, obtained methamphetamine and heroin for the purpose of having it smuggled into LACJ.

Overt Act No. 364:  From April 20, 2014, through April 22, 2014, an co-conspirator Ramon Amaya smuggled approximately 2.37 grams of heroin and 7.75 grams of methamphetamine into LACJ inside his body, with the intent to distribute the drugs within LACJ.

Overt Act No. 365:  On April 22, 2014, co-conspirator Martin Salazar possessed approximately 2.37 grams of heroin and 7.75 grams of methamphetamine that had been smuggled into LACJ by co-conspirator Ramon Amaya in order to secrete the drugs from LASD deputies and to further distribute the drugs within LACJ.

Smuggling of Heroin into LACJ

Overt Act No. 366:  On or before October 22, 2014, co-conspirator Marco Meza agreed with co-conspirator Miguel Rodriguez to smuggle heroin into LACJ.

Overt Act No. 367:  On October 22, 2014, at the direction of co-conspirator Miguel Rodriguez, co-conspirator Marco Meza smuggled approximately 18.82 grams of heroin into LACJ on behalf of defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 368:  On October 22, 2014, co-conspirator Marco Meza called co-conspirator Miguel Rodriguez to report that he had arrived at LACJ with the heroin he had smuggled in.

Smuggling of Methamphetamine and Heroin into LACJ

Overt Act No. 369:  On August 19, 2015, in a recorded telephone conversation, defendant ALVINO MUNOZ discussed smuggling drugs into LACJ with co-conspirator Kelly Jo Bell.

Overt Act No. 370:  On September 1, 2015, in a recorded telephone conversation, defendant ROBERT RAMIREZ spoke to an unidentified unindicted co-conspirator who told defendant ROBERT RAMIREZ that co-conspirator Alejandro Martinez had the drugs to be smuggled into LACJ for defendant JOSE LANDA-RODRIGUEZ.

Overt Act No. 371:  On September 1, 2015, in a recorded telephone conversation, defendant ROBERT RAMIREZ told co-conspirator Kelly Jo Bell that he got the message about co-conspirator Alejandro Martinez smuggling drugs into LACJ, that he located co-conspirator Alejandro Martinez right away, and that he would keep co-conspirator Kelly Jo Bell updated as to the status of the drugs.

Overt Act No. 372:  On September 1, 2015, co-conspirator Alejandro Martinez, having smuggled drugs into LACJ, possessed, inside his body, approximately 41.8 grams of methamphetamine and 61.83 grams of heroin, which was discovered and seized by LASD deputies.

1  D.   SENTENCING ALLEGATION

2        Prior to committing the offense alleged in this Count, defendant
3  VALENTIN CORDOVA had been finally convicted of a serious drug felony
4  as that term is defined and used in Title 21, United States Code,
5  Sections 802(57), 841, and 851, namely, on or about November 15,
6  2020, in the United States District Court for the Central District of
7  California, case number CR 07-01079-DSF, defendant CORDOVA was
8  convicted of Conspiracy to Possess With Intent to Distribute Cocaine,
9  in violation of Title 21, United States Code, Section 846, for which
10  defendant CORDOVA served a term of imprisonment of more than 12
11  months.  Defendant CORDOVA was released from a term of imprisonment
12  for that offense within 15 years of the commencement of the offense
13  alleged in Count Five of this First Superseding Indictment.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

[DEFENDANTS MARK LANDEROS, JUAN NMN GARCIA, AND BRYANNA MCCULLAH]

On or about August 14, 2013, in Los Angeles County, within the Central District of California, defendants MARK LANDEROS, aka "Smokey," aka "Troy," aka "Hot," JUAN NMN GARCIA, aka "Trouble," and BRYANNA MCCULLAH, aka "Bee Bee," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, another person to knowingly and intentionally possess with intent to distribute at least five grams, that is, approximately 22.7 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

[DEFENDANT GABRIEL ZENDEJAS-CHAVEZ]

On or about April 22, 2014, in Los Angeles County, within the Central District of California, defendant GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, other persons to knowingly and intentionally possess with intent to distribute at least five grams, that is, approximately 7.75 grams, of methamphetamine, a Schedule II controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2]

[DEFENDANT GABRIEL ZENDEJAS-CHAVEZ]

On or about April 22, 2014, in Los Angeles County, within the Central District of California, defendant GABRIEL ZENDEJAS-CHAVEZ, aka "Corbatas," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, other persons to knowingly and intentionally possess with intent to distribute approximately 2.37 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii); 18 U.S.C. § 2]

[DEFENDANTS ALVINO MUNOZ AND ROBERT RAMIREZ]

On or about September 1, 2015, in Los Angeles County, within the Central District of California, defendants ALVINO MUNOZ, aka "Bino," aka "B," and ROBERT RAMIREZ, aka "Wiz," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, another person to knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 41.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2]

[DEFENDANTS ALVINO MUNOZ AND ROBERT RAMIREZ]

On or about September 1, 2015, in Los Angeles County, within the Central District of California, defendants ALVINO MUNOZ, aka "Bino," aka "B," and ROBERT RAMIREZ, aka "Wiz," knowingly and intentionally aided, abetted, counseled, commanded, induced and procured, and willfully caused, another person to knowingly and intentionally possess with intent to distribute approximately 61.83 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT ELEVEN

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2(b)]

[DEFENDANT ANA MARTINEZ]

On or about May 25, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANA MARTINEZ, aka "Ana America," aka "Bandit," knowing that the property involved represented the proceeds of some form of unlawful activity, conducted and willfully caused others to conduct a financial transaction affecting interstate and foreign commerce, namely, the conversion to cash of $500 of money orders, representing the proceeds of extortion and a conspiracy to distribute controlled substances, which transaction, in fact, involved the proceeds of specified unlawful activity, that is, Extortion, in violation of California Penal Code Sections 21(a), 31, 182, 518, 519, 524, and 664, and Conspiracy to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 846, with the intent to promote the carrying on of such specified unlawful activity.

COUNT TWELVE

[18 U.S.C. § 1029(a)(3)]

[DEFENDANT ANA MARTINEZ]

On or about August 7, 2013, in Los Angeles County, within the Central District of California, defendant ANA MARTINEZ, aka "Ana America," aka "Bandit," knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately 725 social security numbers belonging to persons other than defendant ANA MARTINEZ, along with dates of birth and names of persons other than defendant ANA MARTINEZ, with said possession affecting interstate and foreign commerce.

COUNT THIRTEEN

[18 U.S.C. § 1028A(a)(1)]

[DEFENDANT ANA MARTINEZ]

On or about August 7, 2013, in Los Angeles County, within the Central District of California, defendant ANA MARTINEZ, aka "Ana America," aka "Bandit," knowingly possessed, without legal authority, means of identification that defendant ANA MARTINEZ knew belonged to another person, that is, a social security number and date of birth belonging to M.V., during and in relation to a felony violation of Title 18, United States Code, Section 1029(a)(3), Possession of at least Fifteen Unauthorized Access Devices, as charged in Count Twelve of this First Superseding Indictment.

1            FORFEITURE ALLEGATION ONE

2              [18 U.S.C. § 1963]

3      1.   Pursuant to Federal Rule of Criminal Procedure 32.2, notice

4  is hereby given that the United States of America will seek

5  forfeiture as part of any sentence, pursuant to Title 18, United

6  States Code, Section 1963, and Title 28 United States Code, Section

7  2461(c), in the event of any defendant's conviction of the offense

8  set forth in Count One of this First Superseding Indictment.

9      2.   Any defendant so convicted shall forfeit to the United

10 States of America the following:

11         (a)   Any interest the defendant has acquired or maintained

12 as a result of such offense;

13         (b)   Any interest in, security of, claim against, or

14 property or contractual right of any kind affording a source or

15 influence over, any enterprise which the defendant has established,

16 operated, controlled, conducted, or participated in the conduct of,

17 as a result of such offense;

18         (c)   Any property constituting, or derived from, any

19 proceeds which the defendant obtained, directly or indirectly, from

20 racketeering activity as a result of such offense.

21     3.   To the extent such property is not available for

22 forfeiture, any defendant so convicted shall forfeit to the United

23 States of America a sum of money equal to the total value of the

24 property described in subparagraphs 2(a), 2(b), and 2(c).

25     4.   Pursuant to Title 18, United States Code, Section 1963(m),

26 any defendant so convicted shall forfeit substitute property, up to

27 the total value of the property described in the preceding paragraph

28 if, as the result of any act or omission of said defendant, the

111

property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Five through Ten of this First Superseding Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in Count Eleven of this First Superseding Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

3. To the extent such property is not available for forfeiture, the defendant, if so convicted, shall forfeit to the United States of America a sum of money equal to the total value of the property described in paragraph 2.

4. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

1  course of the money laundering offense unless the defendant, in

2  committing the offense or offenses giving rise to the forfeiture,

3  conducted three or more separate transactions involving a total of

4  $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. §§ 982 and 1029]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of the defendant's conviction of the offenses set forth in either of Counts Twelve or Thirteen of this First Superseding Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)    Any personal property used or intended to be used to commit the offense.

3.    To the extent such property is not available for forfeiture, the defendant, if so convicted, shall forfeit to the United States of America a sum of money equal to the total value of the property described in subparagraphs 2(a) and 2(b).

4.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a

1  third party; (c) has been placed beyond the jurisdiction of the

2  court; (d) has been substantially diminished in value; or (e) has

3  been commingled with other property that cannot be divided without

4  difficulty.

5

6                                           A TRUE BILL

7

8                                      _____/S/_____

                                       Foreperson

9

10  TRACY L. WILKISON
    United States Attorney

11

12

13  SCOTT M. GARRINGER
    Assistant United States Attorney
    Chief, Criminal Division

14

15  SHAWN J. NELSON
    Assistant United States Attorney
    Chief, International Narcotics, Money

16   Laundering & Racketeering Section

17  KEITH D. ELLISON
    Assistant United States Attorney

18  International Narcotics, Money
     Laundering & Racketeering Section

19

20  GREGG E. MARMARO
    Assistant United States Attorney

21  International Narcotics, Money
     Laundering & Racketeering Section

22

23

24

25

26

27

28