MEGHAN BLANCO (State Bar No. 238171)
LAW OFFICES OF MEGHAN BLANCO
28202 Cabot Road, Suite 300
Laguna Niguel, California 92677
Telephone: (949) 296-9869
Facsimile: (949) 606-8988
mblanco@meghanblanco.com

Attorney for Defendant:
GABRIEL ZENDEJAS-CHAVEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, | CASE NO. 18-CR-173-GW |
| Plaintiff, | MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO EXCLUDE |
| vs. | |
| GABRIEL ZENDEJAS-CHAVEZ, | |
| Defendant. | |

Defendant Gabriel Zendejas-Chavez moves this Court for orders precluding certain evidence and witnesses at trial. This motion is based on the attached memorandum of points and authorities and any further argument of evidence the Court wishes to consider.

Dated: July 31, 2022      Respectfully submitted,

/s/ Meghan Blanco

_____
MEGHAN A. BLANCO
Attorney for Defendant,
GABRIEL ZENDEJAS-CHAVEZ

MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

Mr. Chavez moves this Court for orders precluding the government from (1) referencing the stepping down of Turi Estrada and the murders of GE and DC; and (2) calling CW-4 and CW-6 as witnesses at trial. Further, the government should be ordered to produce the informant referenced in CW-1's file prior to the start of trial.

II. FACTS

a. THE FEBRUARY 4, 2014 MEETING

According to the government, on February 4, 2014, a cooperating witness who was then working as an informant for the Long Beach Police Department (CW-6), notified his handlers that a Mexican Mafia meeting was scheduled to take place at The Zendejas Restaurant in Ontario. Three Long Beach Police Detectives accompanied CW-6 and CW-5 to the meeting. It is unclear whether CW-5 was working as an informant for any law enforcement agency at the time.

The Long Beach Detectives documented the meeting in a series of photographs. Mr. Chavez was not included in any of the photographs. The detectives reportedly told the FBI that they did not take notes or write a formal report of the meeting. However, to date, the FBI has not documented these representations in writing.

On January 15, 2015 – nearly one year after the purported meeting – the FBI drafted a 302 of the event. It is unclear whether the information contained within the 302 came from the reporting detectives, CW-6, or a combination thereof, as the report contains no attribution whatsoever. A copy is attached to the Under Seal Declaration of Meghan Blanco, as Exhibit A. Both CWs were actively cooperating with the FBI by the time agents drafted the January 15, 2015 report.

The initial report of the February 4 meeting indicates that Mr. Chavez attended the meeting and that CW-6 notified Long Beach detectives that Mr. Chavez discussed taking undisclosed messages to inmates at Pelican Bay State Prison. CW-6 did not mention Mafia Member Arturo Estrada or his now-deceased brother, GE.

CW-5 drove to the meeting with CW-6. As indicated above, it is unclear whether CW-5 was cooperating with local law enforcement at the time. However, reports indicate he began cooperating with the FBI by September 2014. During his initial interviews with the FBI, CW-5 disclosed substantial information relating to the FBI's investigation into the Mexican Mafia LACJ Enterprise. However, he did not discuss the February 4, 2014 meeting. CW-5 made his first disclosure regarding the purported February 4, 2014 meeting on March 13, 2015, when he participated in a pre-grand jury proffer with the assigned AUSAs and was specifically asked about the meeting.

CW-5 stated that during the meeting, he was introduced to Mr. Chavez and discussed a pending grand theft auto case. He also indicated that Mr. Chavez notified the group that he planned to see Landa Rodriguez at LACJ. CW-5 did not report that Mr. Chavez discussed passing messages to anyone at Pelican Bay.

CW-5 also indicated, for the very first time, that members of the group discussed problems ***they*** were having with AE's brother GE. However, there was no discussion of stepping down AE or of hurting GE or DC.

Over the course of the next few years, CW-5 and CW-6 were asked additional questions regarding the alleged February 4 meeting. Their accounts varied widely.

Reports indicate that CW-5 worked as a facilitator for AE until early 2014, when he was replaced by AE's brother, GE. CW-5 became upset over this, and complained to deceased Mexican Mafia Member Robert Ruiz. Reportedly, CW-5's fued with GE was the reason he accompanied CW-6 to the February 4, 2014 meeting.

CW-5 reported that in the following months, he met with Ruiz again. Ruiz reportedly ordered him to kill GE, because he previously worked as a soldier for GE's brother, AE. CW-5 claimed to have found others to agree to murder GE for him, although he claims that the two individuals were arrested before they could carry-out the murder. GE and CD[1] were murdered in late 2014 while CW-4 was purportedly working as a facilitator for another, rival Mexican Mafia member.

B. INFORMATION PRODUCED JULY 31, 2022

Last week, the parties appeared before this Court on defendant's motions to compel and to preclude. Two motions addressed the government's discovery obligations relating to various CWs, the stepping down of AE, and the murders of GE and CD. During hearings last Monday and Thursday, the government forcefully asserted that it has complied with all discovery obligations, including the production of all Brady information within its possession. Mr. Chavez notified the Court that he disagreed, and that the government has failed to

---

[1] Besides CD's connection to AE as a facilitator, it is unclear how the government intends to connect CD's murder to any of the coconspirators in this case. Further, defendant has a good faith belief that the government is in possession of information that MS-13, and not the Mexican Mafia, were responsible for CD's murder.

even review files that contain likely Brady and Giglio information. On Friday July 29, 2014, pursuant to this Court's order, Mr. Chavez filed supplemental briefing on this issue.

Just hours ago, the government began producing, for the very first time, information from the CWs' central and confidential files. Information from CW-4 and CW-6's files and from AEs file **_have not been produced yet_**.  Productions from CW-1 and CW-5's files contain exculpatory and *Giglio* information.  Among other things, CW-5's file contains information that CW-5 continued to work for AE through 2017 – well after he cooperated with the government and years after he claimed to have been asked to murder AE's brother.  This information was provided to the government by inmate E.  Defendant Chavez does not know Inmate E's identity and has not had an opportunity to speak with him about the exculpatory information he provided to the government.

CW—5'S file also contains information that CW-5 continued to engage in illegal conduct with associates of the Mexican Mafia through 2019. This means CW-5 was engaged in unauthorized illegal conduct with the Mexican Mafia while he cooperated with agents in this case.  This information was provided to the government by inmate A.  Mr. Chavez does not know inmate A's identity and has not had an opportunity to speak with him about the Giglio information he provided to the government.

CW-1's file contains information that he was heavily addicted to drugs, hallucinated, and had memory lapses during the time he cooperated with the government.  This information was provided to the government by an inmate whose identity Mr. Chavez does not know and to whom he has had no opportunity to speak.

As of the filing of this motion, Mr. Chavez still has not received information from the files of AE, CW-4 or CW-6.  CW-4 previously tried to murder Mr. Chavez, so it is expected that his file will contain exculpatory information.  It is also expected that AE's file will contain additional information regarding his alleged stepping-down and the murders of GE and CD.

III. ARGUMENT

Under *Brady* and its progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence. (*Giglio v. United States*, 405 U.S. at 154; *United States v. Kohring* (9th Cir. 2011) 637 F.3d 895, 901 (recognizing that Giglio extends Brady to include evidence that impeaches a witness's credibility).  Impeachment evidence is sometimes referred to as "Giglio evidence."  The Brady and Giglio rules seek to ensure that criminal proceedings are fair and that prosecutors are faithful to the government's overriding interest that justice be done.  Whether intentional or inadvertent, *Brady and Giglio* violations can have serious consequences, such as reversal of the criminal conviction and remand for a new trial, or modification of the judgment. (*See, e.g., Kyles v. Whitley* (1995) 514 U.S. 419, 421-422, 454; Giglio, supra, 405 U.S. at pp. 154-155).

Here, the government has repeatedly represented to the Court and counsel that all Brady and Giglio information has been produced.  Yet, just earlier today, the government produced exculpatory and impeachment information relating to its main cooperating witnesses.  Information relating to AE, GE and CD's murders, and CWs 3 and 6 is still outstanding.  Mr. Chavez is entitled to know impeachment

information in the government's possession before he explains his case in opening to the jury.  The government has been investigating this matter for nearly a decade.  The remedy for its failure to produce exculpatory and *Gigio* information should be the exclusion of (1) all references to the stepping down of AE and the murders of GE and DC; and (2) CW-4 and CW-6 as witnesses at trial.

IV.   CONCLUSION

For the foregoing reasons, Mr. Chavez respectfully requests that the Court preclude the government from (1) referencing to the stepping down of AE and the murders of GE and DC; and (2) calling CW-4 or CW-6 as witnesses at trial.  Further, the government should be ordered to produce the informant referenced in CW-1's file prior to the start of trial.

Dated:  July 31, 2022          Respectfully submitted,

/s/ Meghan Blanco

MEGHAN A. BLANCO
Attorney for Defendant,
MEGHAN BLANCO

<u>DECLARATION OF MEGHAN BLANCO</u>

I, MEGHAN BLANCO, declare:

1. I am counsel of record for defendant Solomon Brooks in the instant matter. I have been licensed to practice law in the State of California for almost 12 years. For approximately five years, I was an Assistant United States Attorney in the Public Corruption & Civil Rights Section of the United States Attorney's Office for the Central District of California, where, among other things, I investigated and prosecuted law enforcement corruption and civil rights abuses.

2. Attached hereto as exhibit A is a true and correct copy of a notarized statement by Ms. Elizabeth Brainard dated June 19, 2016.

3. Attached hereto as exhibit B is a true and correct copy of the recording of the June 3, 2016 incident played during the preliminary hearing in this matter.

4. Attached hereto as exhibit C is a true and correct copy of Officer Newton's Report dated June 4, 2016.

5. Attached hereto as exhibit D is a true and correct copy of Officer Vriens's Report dated June 4, 2016.

6. Attached hereto as Exhibit E is a true and correct copy of Officer Del Real's report dated June 3, 2016.

///
///
///
///
///
///

7. Attached hereto as Exhibit F are true and correct photographs taken of Mr. Brooks following the incident.

I declare under penalty of perjury, pursuant to the laws of the State of California, that the foregoing is true and correct to the best of my information and belief.

Executed on this 29 day of March, 2017 in Laguna Niguel, California.

By:_____
      MEGHAN BLANCO