E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
SHAWN J. NELSON (Cal. Bar No. 185149)
GREGG E. MARMARO (Cal. Bar No. 338627)
DANIEL H. WEINER (Cal. Bar No. 329025)
Assistant United States Attorneys
International Narcotics, Money Laundering,
 and Racketeering Section
        1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-5339/8500/0813
        Facsimile: (213) 894-0142
        E-mail:    shawn.nelson@usdoj.gov
                   gregg.marmaro@usdoj.gov
                   daniel.weiner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,              No. 2:18-CR-00173(B)-GW-3

            Plaintiff,                 GOVERNMENT'S MOTION IN LIMINE NO.
                                       6 TO EXCLUDE IMPROPER ARGUMENT OF
            v.                         ALLEGED BIAS AS TO DEFENDANT
                                       GABRIEL ZENDEJAS-CHAVEZ
JOSE LANDA-RODRIGUEZ, et al.,
[#3-GABRIEL ZENDEJAS-CHAVEZ],          Hearing Date: August 29, 2024
                                       Hearing Time: 8:00 a.m.
            Defendant.                 Location:     Courtroom of the
                                                     Hon. George H. Wu

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Shawn J. Nelson,

Gregg E. Marmaro, and Daniel H. Weiner, hereby files its Motion in

Limine No. 6 to Exclude Improper Argument of Alleged Bias as to

Defendant Gabriel Zendejas-Chavez.

1    This Motion is based upon the attached memorandum of points and

2    authorities, the files and records in this case, and such further

3    evidence and argument as the Court may permit.

4    Dated: August 1, 2024             Respectfully submitted,

5                                      E. MARTIN ESTRADA
                                       United States Attorney
6
                                       MACK E. JENKINS
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                        /s/
                                       _____
10                                     SHAWN J. NELSON
                                       GREGG E. MARMARO
11                                     DANIEL H. WEINER
                                       Assistant United States Attorneys
12
                                       Attorneys for Plaintiff
13                                     UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

6

7

8

9

At his first trial, counsel for defendant Gabriel Zendejas-Chavez claimed without evidence that the investigative team and the prosecution team were biased against him because of his profession as a criminal defense attorney and because of the clients he represented.  Such arguments and references are baseless, improper, irrelevant, and unfairly prejudicial and should be precluded at the upcoming trial.

10

11

12

13

14

15

16

17

First and foremost, they are improper because there is no credible evidence to support this false claim, and the defense could prove none.  Second, as a legal matter, the defense's unsupported and generalized attacks on the investigative and prosecutorial processes are also not relevant to any valid legal defense at trial and are inadmissible under Rule 401.  Finally, any reference of alleged bias would be unfairly prejudicial, confusing and misleading, and a waste of time, and is thus inadmissible under Rule 403.

18

19

20

21

22

23

For all of these reasons, such arguments have no place in this trial.  Accordingly, the government moves to exclude any improper reference, including through argument or witness examination, attacking the investigation and/or prosecution team (together, the "investigative team") as biased in investigating and prosecuting defendant in this matter.[1]

24

25

26

27

28

---

[1] At this point, the government has no indication that defendants Landa-Rodriguez, Munoz, or Rivera will make similarly improper arguments, so this motion is limited to defendant Chavez. The government reserves the right to file a similar motion in limine as to the other three defendants should those circumstances change.

**II.   FACTUAL BACKGROUND**

**A.   Opening Statement**

In the opening minutes of counsel's opening statement, counsel accused the investigative team of targeting defendant Chavez because of his profession and because of the individuals he represented. Counsel specifically referred to "Special Agent Talamantez and other people on [his] vast task force that includes both the FBI, the LA County Sheriff's Department, members of the DEA, members of the Bureau of Prisons, members of CDCR, members of the Pomona Police Department."   RT 394.   She accused the task force of finding defendant "suspicious" because of his profession and his clients:

> Unfortunately for Mr. Chavez, he is one of the people that they find suspicious.  Any why is Mr. Chavez suspicious to them?  Because Mr. Chavez is a defense attorney, who for a few months, was hugely successful in defending Mexican Mafia members against the government.

Id. at 394-95.  After describing the legal work defendant performed for Mexican Mafia member Robert Ruiz ("Peanut Butter"), counsel discussed how defendant's successful representation of Peanut Butter caused his name to "spread like wildfire throughout all of the correctional facilities in California and elsewhere."  Id. at 395-97. Counsel then asserted that "this is what Mr. Chavez was doing in late 2013, that caused him to get on the radar of law enforcement."  Id. at 397.

Later in her opening, counsel returned to the accusations of bias, expanding it to include the prosecution team: "I know the government wants to do the bare minimum when we defend people, but we need good lawyers, like Mr. Chavez, he does not do the bare minimum, he goes beyond."  Id. at 403.  Counsel also accused the government of trying to prompt the jury to find guilt by association:

> What they are going to try to do is show you how big and
> bad the Mexican Mafia is.  They commit murders, they extort
> people, they do all of these things, and by association
> have you convict Chavez, because he represented people they
> [the government] want you to believe are fundamentally bad
> people.

Id. at 408.

In discussing a specific issue in the case -- a plot to extort the Mongols -- counsel again accused the investigative team of improper motives: "This is something that some agents just held on to, it is a real sexy story.  I mean, if you are investigating an extortion like that, you may hit the cover of the New York Times, you may hit the cover of the LA Times."  Id. at 407-08.  Counsel insinuated that the agents actually suggested this topic to the cooperating witness, stating "This is something that in the interview notes, that it sure looks like the government is suggesting to him, but there is no evidence of it.  Mr. Chavez was charged nonetheless." Id. at 408.

**B.   Closing Argument**

Counsel returned to these themes in closing argument.  Barely a paragraph into her closing, defense counsel impugned the motives of the prosecution team:  "Now, I understand that especially **prosecutors don't like defense attorneys**, but we provide an important work and an important job to our clients, and in fact, we are the only attorneys that are covered by the Constitution."  Closing at 3184-85.

Later, after inserting herself as a witness  ("If you look at my clients, my clients are in jail, have been charged with crimes"), which drew an objection from the government for arguing facts not in evidence, counsel responded to the objection by stating to the jury, "**And you see how uncomfortable the government can be with defense**

3

1    **attorneys**."   Id. at 3190.   The Court stated to defense counsel: "you

2    are making an argument that I do think is improper by saying that

3    normally prosecutors don't like defense counsel, things of that sort.

4    There is no basis for making that type of statement.   That is

5    somewhat beyond the pale."   Id. at 3190-91.   The Court reiterated

6    that the "problem is now you are imposing bad motives on government

7    counsel, and we can't do that sort of thing."   Id. at 3191.

8        Returning to the accusations that the investigative team was

9    biased, counsel stated that the jury should distrust the government's

10   evidence because it was "garnered by government witnesses [] who were

11   cooperating at the time, who are specifically instructed to gather

12   evidence, specific kinds of evidence against Mr. Chavez."   Id. at

13   3188.   Counsel expanded on the assertion that defendant was

14   investigated because of his profession and his clients:

15           When you compare the government's evidence to what Mr.
             Chavez was doing in the case, and in the cases of his
16           clients as he was lawfully functioning as an attorney for
             his clients, I think you will come to the conclusion that
17           [the] government was very uncomfortable with it.   You will
             come to the conclusion that the government didn't like what
18           he was doing, they did not like that Mr. Chavez was very
             active in his cases, that he was collaborating with other
19           lawyers on how to fight the government's charges in cases
             like this that are built primarily on cooperator
20           information.   They do not like that.

21   Id. at 3188-89.   Counsel then underscored this point in unambiguous

22   terms: "What we have is Mr. Chavez, very quickly turning into a

23   target of one of those operations, **an operation that involved Mr.**

24   **Chavez's status as an attorney and his clients that he was**

25   **representing**."   Id. at 3189.

26   **III. ARGUMENT**

27       The Court should preclude defendant and his counsel from arguing

28   that the investigative team was biased against defendant because of

                                    4

his profession as a criminal defense attorney and because of the people he represented.  Such arguments and references have no place at trial because they are false, irrelevant, and unduly prejudicial.

**A.  Any Claim that the Investigative Team was Biased is False, Legally Irrelevant, and Not an Issue for the Jury**

Any suggestion that the investigation and prosecution in this matter were improperly motivated by defendant's profession or the clients he represented is false and unsupported by any credible or specific evidence.  In fact, the lead investigating agent has testified, and will testify, about the many investigative steps that he could <u>not</u> take because of defendant's profession, and about the many procedures, such as the privilege review taint team, that were established to <u>protect</u> the attorney-client privilege.  Defendant's claim is made even more spurious by the significant evidence obtained in this case and the natural investigative steps taken in response, which were unrelated to defendant's legitimate practice of law.  Accordingly, baseless allegations against the investigative team do not constitute credible evidence that the government improperly considered defendant's profession or clients in conducting its investigation or prosecution.

The Court should additionally reject any attempt to make improper and baseless jury arguments regarding the propriety of the government's investigation because it is legally irrelevant for trial.  "Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty.  The jury is not asked to render . . . a verdict on the government's investigation."  <u>United States v. McVeigh</u>, 153 F.3d 1166, 1192 (10th Cir. 1998).  In <u>McVeigh</u>, the defendant tried to introduce evidence

5

1    that would purportedly show the government's investigation was
2    "slanted," among other things.  Id.  The Tenth Circuit affirmed (and
3    even "commended") the district court's exclusion of such evidence and
4    the defense's efforts to "put the government on trial."  Id.  While
5    the propriety of the government's investigation could become relevant
6    by, for instance, challenging the provenance of a particular piece of
7    evidence (like a flawed chain of custody for physical evidence),
8    general attacks on the investigation are improper and only "divert
9    the jury's attention from the issues of the trial."  Id.; see also
10   United States v. Scrushy, 721 F.3d 1288, 1305 (11th Cir. 2013)
11   ("Whether the decision to prosecute [the defendant] was motivated by
12   improper reasons has no bearing on the integrity of the trial or the
13   verdict."); United States v. Veal, 23 F.3d 985, 989 (6th Cir. 1994)
14   (affirming trial court's refusal to allow defense evidence attacking
15   the investigation; "the jury would not be called upon to determine
16   whether the government's investigation had been good or bad"); United
17   States v. Nolan, 443 F. App'x 259, 261 (9th Cir. 2011) (holding that
18   defendant's proffered evidence attacking the failure to obtain
19   surveillance video "was irrelevant because the propriety of the
20   government's investigation was not of consequence to the
21   determination of the action").  Particularly given the utter lack of
22   evidence that any bias played a role in this investigation, there is
23   no fact of consequence that is made more or less probable based on
24   the investigative team's alleged bias.  And defendant has failed to
25   identify any specific piece of evidence connected to any alleged
26   bias.

27        A claim of an improper motive to investigate and prosecute a
28   defendant based on an improper consideration -- here, defendant's

1    profession as a criminal defense attorney and his clients'

2    affiliation with the Mexican Mafia -- would be nothing more than a

3    Trojan Horse for a selective prosecution claim.  This type of

4    argument would bypass that legal vehicle and instead taint the jury

5    with his baseless claims.  Critically, however, the law makes clear

6    that "[a] selective-prosecution claim is <u>not a defense on the merits

7    to the criminal charge itself</u>, but an independent assertion that the

8    prosecutor has brought the charge for reasons forbidden by the

9    Constitution."  <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996)

10   (emphasis added); <u>United States v. Wilson</u>, 639 F.2d 500, 502 (9th

11   Cir. 1981) ("The issue of selective prosecution has nothing to do

12   with whether the defendants did or did not commit the charged

13   offense.") (cleaned up).[2]  This would be improper.

14        For the same reasons, a claim of improper motive, and

15   specifically, that the investigative team targeted defendant in

16   retaliation for his successful efforts in securing the release from

17   prison of Peanut Butter, would be a disguised claim for vindictive

18   prosecution, which is similarly not an issue for the jury and instead

19

20        [2] <u>See also</u> <u>United States v. Washington</u>, 705 F.2d 489, 495 (D.C.
     Cir. 1983) (issue of selective prosecution "is one to be determined
21   by the court, as it relates to an issue of law entirely independent
     of the ultimate issue of whether the defendant actually committed the
22   crimes for which she was charged" (citations omitted)); <u>see</u> <u>United
     States v. Abboud</u>, 438 F.3d 554, 579 (6th Cir. 2006) ("The question of
23   discriminatory prosecution relates not to the guilt or innocence . .
     . and "is a matter for the court, not the jury." (citation omitted));
24   <u>United States v. Regan</u>, 103 F.3d 1072, 1082 (2d Cir. 1997) (selective
     prosecution claim is "ultimately separate from the issue of [the
25   defendant's] factual guilt"); <u>United States v. Washington</u>, 705 F.2d
     489, 495 (D.C. Cir. 1983) (selective prosecution "relates to an issue
26   of law entirely independent of the ultimate issue of whether the
     defendant actually committed the crimes for which she was charged");
27   <u>United States v. Napper</u>, 553 F. Supp. 231, 232 (E.D.N.Y. 1982)
     (defendant's claim that the prosecutor brought the charges for a
28   discriminatory reason is an issue "properly determined only by the
     Court, and may not be argued before the fact-finders").

                                    7

1    must be raised as a defect in the indictment.  See, e.g., United
2    States v. Wylie, 625 F.2d 1372, 1378 (9th Cir. 1980) (rejecting
3    defendants' argument that they were entitled to jury instruction on
4    the alleged "outrageousness" of government conduct, because that is a
5    "question of law for the court").

6        In sum, argument or reference to purported bias by the
7    investigative team is irrelevant under Rule 401.

8        **B.   Any Claim of Alleged Bias Is Inadmissible Under Rule 403**

9        Permitting the issue of the investigators' purported bias to go
10   before the jury would also present a high risk of unfair prejudice,
11   confuse and mislead the jury, and waste time.  See Fed. R. Evid. 403.
12   Evidence is not admissible simply to create sympathy or outrage on
13   the part of the jury or to encourage them to render a decision based
14   on something other than the facts of the case.  See Old Chief v.
15   United States, 519 U.S. 172, 180 (1997) (unfair prejudice "means an
16   undue tendency to suggest decision on an improper basis, commonly,
17   though not necessarily, an emotional one"); Merced v. McGrath, 426
18   F.3d 1076, 1079-80 (9th Cir. 2005) (nullification is "a violation of
19   a juror's sworn duty to follow the law as instructed by the court.").

20       If the defense were permitted to falsely suggest that the
21   federal government chose to prosecute defendant based on improper
22   considerations -- here, because of defendant's profession and
23   clients, but also for any other improper consideration such as race
24   or ethnicity -- there would be a high risk that an ordinary juror
25   would be outraged and seek to punish the government with verdicts
26   inconsistent with the jury instructions and evidence.  This would
27   violate the jurors' sworn duty and defendant should not be permitted
28   the opportunity to enable or instigate that violation.  Defense

counsel's arguments and reference to purported bias at the first trial were highly and unfairly prejudicial, and the Court should exclude them under Rule 403 for the next trial.

**IV.  CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant is Motion <u>in Limine</u> No. 6 and preclude defense counsel from arguing to the jury that the investigative team and the prosecution team were biased against defendant because of his profession as a criminal defense attorney and because of the clients he represented.